CATHERINE MONOHAN, Plaintiff, v. GEORGE DEVINNY and Another, Defendants.*

Supreme Court, Albany County, November, 1927.

**Physicians and surgeons — malpractice — action against chiropractors — two-year Statute of Limitations (Civ. Prac. Act, § 50) applies to irregular as well as regular medical practices — action barred.**

This is an action for malpractice against chiropractors. The two-year Statute of Limitations (Civ. Prac. Act, § 50) applies to irregular as well as regular medical practitioners in the absence of express legislative declaration to the contrary, and, therefore, the complaint in this action for damages for injuries claimed to have been suffered more than two years before the commencement of the action, by reason of defendants' unskillful treatment, must be dismissed.

In so far as the term "malpractice" has been used in relation to the medical profession, it has been applied, not only to duly licensed physicians and surgeons, but to irregular practitioners as well.

MOTION by the defendants to dismiss the complaint.

*Harry W. Williams*, for the plaintiff.

*Carleton Shaw*, for the defendants.

STALEY, J. This is a motion to dismiss the complaint on the ground that the Statute of Limitations has barred the plaintiff's cause of action. Rules of Civil Practice, rule 107.

The plaintiff alleges that the defendants maintain an establishment in the city of Albany for the practice of chiropractic, which is an alleged method of curing maladies by the adjustment and manipulation of various parts of the body, and in particular the spinal column; that in October, 1924, plaintiff employed the defendants to render her twenty treatments for the sum of $30, and that the defendants undertook to render such treatments; that on October 28, 1924, defendants so unskillfully, negligently and willfully applied pressure to her spinal column, with such force, as to cause a fracture and collapse of the same; and that as a result plaintiff has become paralyzed. Plaintiff demands $500,000 damages, and alleges absence of contributory negligence.

The cause of action alleged is one in tort for the recovery of damages, and not on contract. If this action had been brought against a regularly licensed physician, it would without question be termed an action to recover damages for malpractice, and the Statute of Limitations, which is two years in the case of malpractice, would apply. (Civ. Prac. Act, § 50, subd. 1; *Hurlburt* v. *Gillett*, 96 Misc. 585; affd., 176 App. Div. 893; *Tulloch* v. *Haselo*, 218 id. 313; *Horowitz* v. *Bogart*, Id. 158; *Frankel* v. *Wolper*, 181 id. 485; *Sly* v. *Van Lengen*, 120 Misc. 420.)

---

* Modified, 223 App. Div. 547.

The practice of medicine is defined by the statute as follows: A person practices medicine, within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition. (Public Health Law, § 160, subd. 7.)*

A chiropractor, who is not licensed to practice medicine in this State, is unlawfully practicing medicine when he diagnoses ailments of the human body and treats the same. (*People* v. *Ellis*, 162 App. Div. 288.) The claim of the plaintiff is that a chiropractor, having no professional standing under the laws of this State, cannot claim the protection of the statute providing for a two-year limitation in the case of malpractice, apparently proceeding on the theory that the two-year statute is in the nature of an indulgence to duly licensed physicians.

The term "malpractice" is not defined in the statute. In so far as the term "malpractice" has been used in relation to the medical profession, it has been applied, not only to duly licensed physicians and surgeons, but to irregular practitioners as well, and also to nurses, midwives and apothecaries. This has been its use in many well-known medico-legal treatises. It signifies bad practices, either through lack of skill, or neglect to apply it, if possessed. (Med. Juris. Brothers [2d ed.], 169; 2 Med. Juris. Insanity, Clevenger, 1179; Manual of Laws Affecting Medical Men, Glenn, 254; Legal Medicine, Stewart, 241; Forensic Medicine, Woodman & Tidy, 626.)

The term "malpractice" has also been applied by the courts, not only to regularly licensed physicians and surgeons, but to others who have held themselves out, professionally, as being able to treat the human body and cure disease thereof. (*Musser's Executor* v. *Chase*, 29 Ohio St. 577; *Nelson* v. *Harrington*, 72 Wis. 591; 40 N. W. 228.) In *Brown* v. *Shyne* (242 N. Y. 176), Judge LEHMAN, in writing for the Court of Appeals in the case of alleged negligence of a chiropractor, refers to the plaintiff's cause of action as one for negligence or malpractice.

At page 181 of Judge LEHMAN's opinion it is said that: "The defendant in offering to treat the plaintiff held himself out as qualified to give treatment. He must meet the professional standards of skill and care prevailing among those who do offer

---

* Now Education Law, § 1250, subd. 7, as added by Laws of 1927, chap. 85.— [REP.

treatment lawfully. If injury follows through failure to meet those standards, the plaintiff may recover."

This declaration fixes the standard of skill and care of a chiropractor in this State, and establishes that to be the standard of a legally authorized physician, and holds that liability follows a failure to perform acts in practice which falls short of that standard.

Malpractice involves any professional misconduct or any unreasonable lack of skill in the performance of professional duties. If the defendants, as chiropractors, are held in the treatment of their patrons and patients to the standard of care and skill required of regular physicians, then it must follow that a cause of action against them must be determined to be similar in kind to that which may be asserted under similar circumstances against a legal practitioner. Since the term " malpractice " has been used as indicated above, by the courts and by medico-legal writers, who, in many instances, are physicians and surgeons, it is the best evidence of the true significance of the word, in the absence of legislative definition.

The claim is made by the plaintiff that, if the two-year statute is applied to irregular practitioners, it would grant to them the same indulgence as a duly licensed physician and surgeon. I think any consideration of this kind is based upon a wrong assumption. I do not think that the two-year Statute of Limitations as to malpractice was adopted for the purpose of granting an indulgence to duly licensed physicians and surgeons, simply because they were regular and legal practitioners, but that the statute was passed because of the uncertainty of the results attending the treatment of disease in the first place, and the increasing difficulty of tracing such results as time goes on. Age, inherited traits, latent diseases, debilitated conditions, sometimes render the most skillful treatment unavailing.

The law does not impose a duty on the most skillful practitioner of medicine to effect a cure, nor have the courts or the Legislature ever attempted to standardize methods of treatment. The most that has been done in this direction is to prescribe certain educational requirements, evidenced by a certificate, preliminary to practice.

The failure to possess a certificate is not, at common law, evidence of incompetence, and, even under the statute recently enacted, the lack of a certificate is simply presumptive evidence of a lack of skill. It is not *per se* malpractice to undertake to treat disease without a certificate. (*Brown* v. *Shyne,* 242 N. Y. 176; Laws of 1926, chap. 834.)

In view of the present state of the law as it relates to malpractice,

I am of the opinion that the two-year Statute of Limitations applies to irregular as well as to regular practitioners, in the absence of express legislative declaration to the contrary.

Order may be entered, dismissing the complaint, with ten dollars costs.