Argued October 14; affirmed November 10, 1936

GOODMAN *v.* FERNALD ET AL.

(61 P. (2d) 1253)

*C. W. Robison*, of Portland (Leland B. Shaw, of Portland, on the brief), for appellant.

*A. H. McCurtain*, of Portland, for respondents.

KELLY, J. The complaint herein contains the following allegations:

## "I

That at the date of the accident and injury hereinafter mentioned Josephine Harker Fernald, deceased, was the owner of that certain store building located on Lot one (1) Block eleven (11), City of Portland, Oregon, known as 223 First Street (1007 and 1009 new numbers) in the City of Portland, Oregon. That on November 10, 1933 Josephine Harker Fernald died, and defendants John Bailey Fernald and Chester Bailey Fernald are her heirs at law and now own or possess some interest in said real property.

## II

That during all the times herein mentioned, the said Wakefield Fries & Company were a corporation duly organized and existing under the laws of the State of Oregon for the purpose of the selling and rental of real property, houses, and store buildings; that among the said store buildings rented by the said Wakefield Fries & Company, was that store building known and designated as number 223 First Street (1007-1009, new num-

ber) in the City of Portland, County of Multnomah, State of Oregon and that said store building was rented by the plaintiff herein, Louis Goodman, at the agreed and accepted rental of Thirty-five (35.00) Dollars per month.

## III

That on or about the 19th day of July, 1932, the said Louis Goodman noticed a certain sagging and falling in the entrance of the store building on that portion of the premises necessary to be traveled by the patrons of the store in their entrance and exit from said store building and that it was necessary for said patrons to walk over said portion of doorway in the entrance of said building in their ingress and egress of said store building; that the said Louis Goodman tested the defective portion by steppin(g) upon it, setting and resting his weight upon it and feared that the same was faulty and defective and might cause injury to the patrons of his establishment and to himself in his and their entrance and exits from said store building; that the said Louis Goodman called the firm of Wakefield Fries & Company, agents of the owner herein, to whom he paid his rent for a long period prior to said time and complained to them of said defective and faulty condition; that said Wakefield Fries & Company, acting for and on behalf of the owner of the property herein and in line with their scope of authority came to said place of business and examined said property and informed the said Louis Goodman that they believed the said property to be defective and assured him that if he would continue in said place of business and pay his rent thereof, that they would remedy said defects in said flooring entrance; and that said Louis Goodman relied upon said promise and continued said tenancy for a period of approximately one month; that nothing was done and the said Louis Goodman again notified the said Wakefield Fries & Company as to said condition and they informed him that as soon as their carpenter could get to the matter in a very short space of time they would repair said flooring and that

they would make the same safe and useful; and that if he would continue in said premises they would make the necessary repairs immediately and that the said Louis Goodman relied upon said statements of said agents, Wakefield Fries & Company, and remained in said premises and continued to pay his rent and that said Wakefield Fries & Company in the collection of said rental sent a collector and agent and servant of said company to the place of business and collected said rent and assured the said Louis Goodman that in a very few days, if he would continue in said premises, they would fix the same; but that thereafter and within a week of said time, said flooring became so defective, rotten, and worn that the braces or underpinnings therefrom gave way and that in the emergency that arose at that time the said Louis Goodman was precipitated in and fell through said flooring, breaking and fracturing his right elbow; that the said Louis Goodman is a shoe merchant and repairer by trade and that said injury caused by defendants' herein failure to keep their contract with the said Louis Goodman caused him permanent injury caused him in said right elbow making it impossible for him to continue in his livlihood and caused him to expend          Dollars for doctor and hospital bills and caused him a permanent injury and damage in the sum of Twenty-five Thousand ($25,000.00) Dollars.''

To this complaint, defendant, Wakefield Fries & Company, demurred upon two grounds—

(1) That the complaint does not state facts sufficient to constitute a cause of action against the defendant Wakefield Fries & Company.

(2) That it appears upon the face of the complaint that the action has not been commenced within the time limited by the Oregon Code.

The action of the trial court in sustaining said demurrer is the subject of review upon this appeal.

■ It will be noted that the complaint alleges that defendant, Wakefield Fries & Company, were ''acting

for and on behalf of the owner of the property herein and in line with their scope of authority".

"An authorized agent for a disclosed principal, in the absence of circumstances showing that personal responsibility was incurred, is not personally liable to the other contracting party." 3 C. J. S. p. 119, § 215, Subject: Agency, and cases cited in note 21 including *Porter Const. Co. v. Berry,* 136 Or. 80 (298 P. 179); *Stark v. McKenna,* 124 Or. 332 (263 P. 391); *Hermann v. Clark,* 108 Or. 457 (219 P. 608).

In those cases wherein the agent has been held liable for damages caused by the defective condition of property, the personal responsibility is based upon the control of the property by the agent.

Plaintiff cites the case of *Mollino v. Ogden & Clarkson Corp. et al.,* 243 N. Y. 450 (154 N. E. 307, 49 A. L. R. 518). There the agent had contracted with the owner and her attorney to take charge of the building "including its improvement and repair". The agent was held liable to a pedestrian injured by fall of portion of chimney.

In *Lough v. John Davis & Co. et al.,* 30 Wash. 204 (70 P. 491, 17 Neg. Rep. 146, 59 L. R. A. 802, 94 Am. St. Rep. 848), also cited by plaintiff, the complaint alleges that defendant (agent) was in absolute control and management with full power, authority and direction to repair. The court say: "To allege that it agreed to do so would only be to allege the agreement to do the duty which the law imposed upon it after it had assumed the control and management which is alleged."

We quote from *Mayer v. Thompson-Hutchison Building Co.,* 104 Ala. 611 (16 So. 620, 28 L. R. A. 433, 53 Am. St. Rep. 88), also cited by plaintiff:

"We think the better rule declared in Baird v. Shipman, 132 Ill. 16, (23 N. E. 384,) 22 Am. St. Rep. 504,

(7 L. R. A. 128), in which it is held that 'an agent of the owner of property, who has complete control and management of the premises, and who is bound to keep them in repair, is liable to third persons for injuries resulting to the latter, etc. * * * It is not his contract that exposes him to liability to third persons, but his common law obligation to so use that which he controls as not to injure another.' "

In *Orcutt v. Century Building Co.*, 201 Mo. 424 (99 S. W. 1062, 8 L. R. A. (N. S.) 929), defendant trust company was made trustee under deed of trust to secure bonds issued by the company that owned the building and by written instrument attorney in fact irrevocable to rent the building, collect the rents, and pay taxes, ground rent, interest on bonds, insurance and all expenses connected with the maintenance, repairs and management of the buildings. It was not only given control over the purse strings but full management and control of the building and employed the caretakers, including the elevator operators, and paid them. It was held that the trust company was liable to a third person (a passenger in the freight elevator) caused by the negligent operation of the elevator, or by defective elevator machinery. Held also that an agent guilty of misfeasance, having entered upon the work and failed negligently in its performance, is liable.

*Baird v. Shipman*, 132 Ill. 16 (23 N. E. 384, 22 Am. St. Rep. 504, 7 L. R. A. 128), also cited by plaintiff is a case wherein an agent of a nonresident owner of a house and lot, having the same charge of the property as the owner would have had, were he present, leases the same with notice or knowledge that one of the stable doors on the premises is unsafe and in a dangerous condition, and an expressman, while engaged in delivering a load of kindling wood in the barn for one of the

tenants, was killed by the falling of such door, it was held that the agent was liable to the personal representative of the deceased in damages and could not excuse himself on the plea of the liability of his principal.

These five cases are all distinguishable from the instant case in that control of the property rested with defendant in those cases, while in the case at bar there is no allegation in the complaint that defendant Wakefield Fries & Company had control of the property.

The nature of the relief demanded by plaintiff consists merely of alleged damages for personal injuries sustained.

Such damages are recoverable in cases wherein a landlord had agreed to make repairs and negligently fails to do so by reason of which failure the tenant, if not chargeable with assumption of the risk and free from contributory negligence, is injured: *Ashmun v. Nichols,* 92 Or. 223 (178 P. 234, 180 P. 510). They are likewise recoverable when an agent of the landlord is given control of the premises under agreement with his principal to keep the premises in repair and negligently fails to do so to the injury of a tenant, who is not chargeable with assumption of the risk and is free from contributory negligence. In both of these cases the cause of action is based upon the negligent management of the property to another's injury and not upon contract.

If it had been alleged that defendant Wakefield Fries & Company was in control of the premises in suit and had agreed with the owner to keep same in repair, then Wakefield Fries & Company would be liable for the negligent management of the property under its control. That liability would not be based upon contract, but upon the failure of Wakefield Fries & Company to comply with the law which requires

every one to so manage and operate property within his control as not to injure another. The remedy is not ex contractu.

■Assuming that the complaint alleges an agreement by Wakefield Fries & Company to make repairs to the floor in question and a mere breach of such agreement, the weight of authority is to the effect that damages for personal injuries could not be awarded in such a case.

"It is the general rule that in covenanting to repair the leased premises the parties are not presumed to contemplate or intend that, if the premises become defective through the landlord's failure to comply with his covenant, an accidental injury to the tenant, or someone in privity with him, or a third person, shall be considered as the proximate result of the breach, and hence damages due to such an injury are not to be included in assessing the damages for the breach." Par. 2 subdiv. b, Annotation, Subject: "Breach of lessor's covenant to repair as ground of liability for damages for personal injuries to tenant, or in privity with latter." 8 A. L. R. p. 765 at p. 779, and authorities there cited.

Annotation same subject, 68 A. L. R. p. 1194, and authorities cited in A. L. R. Blue Book of Supplemental Decisions, p. 461, under heading 68 A. L. R. 1194.

*Ashmun v. Nichols,* supra, recognizes the minority rule that where the landlord negligently fails to repair after agreeing to do so, and the tenant is not contributorily negligent, the tenant may recover for personal injuries, but it is clear that such recovery is based upon the tort of the landlord. This case has been criticised, because it does not consider that it was the duty of the tenant to make the repairs and thereby avoid any danger of personal injury. This criticism seems to disregard the principle that the promise to repair after

the landlord's attention has been called to the defective condition would relieve the tenant from the burden of assuming the risk during such time as would reasonably appear proper for the repairs to be made and the promise of the landlord to be fulfilled: *Bland v. Gross,* 10 N. J. M. 446 (159 Atl. 392).

■ It is Hornbook law that, under the common law, actions ex contractu were assumpsit, covenant, debt and account, while actions ex delicto were trespass, trover, case, detinue and replevin.

Case was the appropriate form of action for torts not committed by force, actual or implied, or for torts committed by force, actual or implied, where the matter affected was not tangible; or the injury was not immediate, but consequential; or the interest in the property injured was only in reversion.

Forms of pleading have been abolished in this state; but we are called upon to determine whether this action is upon contract or not. If based upon contract, it is not barred by the statute of limitations; but if upon tort, the period of statutory limitations had elapsed after the accrual of the cause of action and before the institution of the action.

■ We think the gravamen of the complaint is tort (Vol. 2, Restatement of the Law, Torts, p. 967, § 357, Comment a) not committed by force, namely negligent failure to repair the floor in question; and hence, even if such a cause of action had been stated in the complaint, the demurrer should have been sustained on the ground that the action was not instituted within the time limited by the code.

The judgment of the circuit court is affirmed.

BELT and RAND, JJ., not sitting.