Argued December 14, 1949; affirmed January 17, 1950

## WILDER *v.* HAWORTH

213 P. (2d) 797

· *B. G. Skulason,* of Portland, argued the cause and filed a brief for appellant.

*E. K. Oppenheimer* and *Wayne A. Williamson,* both of Portland, argued the cause for respondent. With Wayne A. Williamson on the brief were Wilbur, Beckett, Oppenheimer, Mautz & Souther, of Portland.

Before LUSK, Chief Justice, and ROSSMAN, BAILEY, HAY and PAGE, Justices.

HAY, J.

Plaintiff brought this action against defendant for damages for alleged medical malpractice. According to the amended complaint, defendant was a licensed physician and surgeon "and held himself out as a specialist in X-ray diagnosis and therapy"; on or about January 10, 1937, plaintiff employed defendant in his capacity as physician and surgeon and X-ray specialist "to treat a uterine tumor with which it was believed the plaintiff was afflicted"; on the following day, defendant subjected plaintiff to X-ray therapy, in the course of which he exposed a portion of her body to X-rays in a manner so careless, negligent and unskillful as to burn severely certain of her

internal organs; as a result of such burning, plaintiff "became nervous, weak and ill and suffered great pain and permanent injury"; at that time, and thereafter until August 21, 1946, plaintiff was under the constant care of another physician, and also consulted with "other competent physicians and surgeons", who gave her many physical examinations and various kinds of medical treatment, but without affording her any relief; on August 21, 1946, an abdominal surgical operation was performed on plaintiff [but not by defendant] and then, for the first time, she learned "that she never had a uterine tumor and that her said condition was the proximate result of the defendant's negligence, carelessness and unskillfulness aforesaid". She demanded $50,000 in general damages and $4,-900.63 in special damages.

· Defendant demurred to the amended complaint upon the ground that the action had not been instituted within the time permitted by law. The demurrer was sustained, and, plaintiff refusing to plead further, the court entered judgment dismissing the cause. Plaintiff has appealed from such judgment, assigning as error the sustaining of defendant's demurrer.

■ The action, being based upon alleged negligent performance by defendant of his contract with plaintiff, sounds in tort. 38 Am. Jur., Negligence, section 20; 41 Am. Jur., Physicians and Surgeons, section 122, text and note 4; *Currey v. Butcher,* 37 Or. 380, 384, 61 P. 631. The two-year statute of limitations, O. C. L. A., section 1-206, is applicable.

■ The general rule in such cases is that the statute of limitations begins to run against the cause of action at the time when the act or omission constituting the alleged malpractice takes place. *Shives v. Chamber-*

*lain* (1942) 168 Or. 676, 685, 126 P. 2d 28; *Becker v. Floersch* (1941) 153 Kan. 374, 110 P. 2d 752, 754; *Gangloff v. Apfelbach* (1943) 319 Ill. App. 596, 49 N. E. 2d 795, 798, 800; *Albert v. Sherman* (1934) 167 Tenn. 133, 67 S. W. 2d 140, 141; *Carrell v. Denton* (1942) 138 Tex. 145, 157 S. W. 2d 878; *Weinstein v. Blanchard* (1932) 109 N. J. L. 332, 162 A. 601, 602; *McCoy v. Stevens* (1935) 182 Wash. 55, 44 P. 2d 797; *Ogg v. Robb* (1917) 181 Iowa 155, 162 N. W. 217, 220, L. R. A. 1918C 981; Anno., 74 A. L. R. 1319, s. 144 A. L. R. 212; 34 Am. Jur., Limitation of Actions, section 160.

The rule under which the statute of limitations begins to run at the time of the occurrence of the negligent act or omission in such cases has been criticized. Even with no lack of diligence on the part of the patient, he may not, within two years after the commission of the tort, become aware of the physician's negligence or of the resultant injury. *Bowers v. Santee* (1919) 99 Ohio State 361, 366, 124 N. E. 238; Oppenheimer, Medical Jurisprudence (1935) section 37, at p. 113. In Missouri, the criticism has been met by a statutory proviso, to the effect that the cause of action shall not be deemed to accrue when the wrong is done, but when the damage resulting therefrom is sustained and is capable of ascertainment. Mo. Rev. Stat. (1939) section 1012. See *Thatcher v. De Tar* (1943) 351 Mo. 603, 173 S. W. 2d 760.

■ In some jurisdictions, including Oregon, in cases where the malpractice consisted of negligent acts or omissions extending throughout the whole course of treatment of the patient by the physician, the courts have to some extent mitigated the harshness of the rule of strict application of the statute of limitations,

by ruling that the negligence is in the nature of a continuing tort, and that the statute does not begin to run until the termination of the treatment. It was so held by this court in *Shives v. Chamberlain*, supra (168 Or. 676, 685, 126 P. 2d 28) and in *Hotelling v. Walther* (1942) 169 Or. 559, 565, 130 P. 2d 944, 144 A. L. R. 205. The Shives case was based upon negligence in treatment of plaintiff's eyes, which were afflicted with glaucoma, the treatment extending over a period of one year. In the Hotelling case, the defendant, a dentist, extracted a wisdom tooth for plaintiff, and infection resulted from broken parts of the tooth being left in the tooth socket. We held that the negligent treatment in such cases must be considered as a whole, and constitutes but a single cause of action. The statute of limitations begins to run thereon from the last date of the continuous negligent treatment. See also *Bush v. Cress* (1929) 178 Minn. 482, 227 N. W. 432; *De Haan v. Winter* (1932) 258 Mich. 293, 241 N. W. 923, 924; *Peteler v. Robison* (1932) 81 Utah 535, 17 P. 2d 244, 249; *Williams v. Elias* (1941) 140 Neb. 656, 1 N. W. 2d 121, 124; *Trombley v. Kolts,* (1938) 29 Cal. App. 2d 699, 85 P. 2d 541, 546.

Plaintiff appears to concede that, as a general rule, the two-year statute of limitations governs cases of tort to the person, but contends that there is an exception to such general rule in malpractice cases, and that the statute in such cases does not begin to run until the patient discovers or, by reasonable diligence, should have discovered the negligence of the physician and its consequences. This appears to be the rule in California, and plaintiff cites a number of decisions from that jurisdiction. The rule was applied in *Ehlen*

*v. Burrows* (1942) 51 Cal. App. 2d 141, 124 P. 2d 82, where the defendant surgeon had left broken roots of teeth in a patient's jaw after extraction of the teeth. The court held that there was no differenc in principle between leaving in the patient's body fragments of teeth which the surgeon had undertaken to remove, and leaving in a patient's body a sponge or a drainage tube which had served its purpose and should have been removed. In *Pellett v. Sonotone Corporation* (1942) 55 Cal. App. 2d 158, 130 P. 2d 181, in which defendants left pieces of plaster of paris in a person's ear after making a plaster cast of the ear, and the same rule was followed.

In *Marsh v. Industrial Accident Commission* (1933) 217 Cal. 338, 18 P. 2d 933, 86 A. L. R. 563, a case involving claims for compensation under the workmen's compensation law by miners who had contracted the disease commonly called silicosis, by inhalation of dust-laden atmosphere in the course of their employment, the court held that the date of the injury was not the date of their exposure to the dust-laden atmosphere, nor even the date of their last exposure thereto, but rather the time when they became aware, or, by the exercise of reasonable care and diligence, ought to have become aware, that their injuries were due to such exposure. In *Huysman v. Kirsch* (1936) 6 Cal. 2d 302, 57 P. 2d 908, a malpractice case, the defendant physician had performed a surgical operation upon plaintiff, and, in closing the incision, had negligently left therein a piece of rubber drainage tubing, the presence of which resulted in an infection from which the patient thereafter suffered for several years. The defendant, without being aware of the cause of the infection, continued to treat the patient, and finally,

having reopened the incision, he found the tubing and removed it. The court, by analogy with the rule adopted for industrial accident cases in *Marsh v. Industrial Accident Commission,* supra (217 Cal. 338, 18 P. 2d 933, 86 A. L. R. 563), held that the statute of limitations does not commence to run until the cause of the injury becomes known, or reasonably should have become known, to the patient. *Agnew v. Larson* (1947) 82 Cal. App. 2d 176, 185 P. 2d 851, was a malpractice case wherein plaintiff sought damages for injuries suffered by her through the prescribed use of stilbestrol, a drug which is a synthetic estrogen containing properties which may, under certain circumstances, produce or cause cancer, and which, as she alleged, did cause cancer to develop in her body. The rule of *Marsh v. Industrial Accident Commission,* supra, was applied by the court in that case also. See, also, *Petrucci v. Heidenreich* (1941) 43 Cal. App. 2d 561, 111 P. 2d 421; *Alford v. Industrial Accident Commission* (1946) 28 Cal. 2d 198, 169 P. 2d 641; Anno., 144 A. L. R. 214.

In Oregon, however, claims for compensation under the workmen's compensation act must be filed within certain prescribed periods which are to be calculated from the date of the accident. Section 102-1771, O. C. L. A., as amended by chapter 381, Or. L. 1945. This court has held that the date of the accident, and not the date of the manifestation of a condition of physical disability resulting from the accident, is the time when the prescriptive period for the filing of a claim for compensation therefor begins to run. *Lough v. State Industrial Accident Commission* (1922) 104 Or. 313, 207 P. 354; *Rosell v. State Industrial Accident Commission* (1939) 164 Or. 173, 95 P. 2d 726; *Landauer v.*

*State Industrial Accident Commission* (1944) 175 Or. 418, 154 P. 2d 189; *Tice v. State Industrial Accident Commission* (1948) 183 Or. 593, 195 P. 2d 188.

■ No continuous treatment was involved in the present case. Defendant subjected plaintiff to X-ray therapy on one day only—January 11, 1937, and gave her no further treatment or professional advice. Her cause of action, therefore, accrued January 11, 1937. The statute of limitations commenced to run on that day, and the period of limitation expired January 12, 1939. The present action was not commenced until July 2, 1948, or more than nine years after the cause had been barred by the statute.

Even if plaintiff had brought her action upon breach of contract (assuming, without deciding, that she might have done so), the more liberal six-year statute of limitations applicable in such cases, O. C. L. A., section 1-204, would have run against it.

■■ Counsel for plaintiff, on oral argument before this court, urged that we should ignore precedent and determine the question presented by the appeal upon broad considerations of justice. But the constitutional authority of a court of law is limited to the interpretation and enforcement of the law as it is written. Moreover, broad considerations of justice require that there should be statutes of repose to prevent the presentation of stale claims and discourage the assertion of fraudulent ones. "The statute of limitations is a statute of repose, designed to protect the citizens from stale and vexatious claims, and to make an end to the possibility of litigation after the lapse of a reasonable time." *Guaranty Trust Co. v. United States,* 304 U. S. 126, 82 L. ed. 1224, 58 S. Ct. 785. Such protection is especially necessary in cases

of the present sort. The physician and surgeon often are handicapped in their defense, because of the mute appeal that is made to the sympathies of jurors by the pitiable condition of plaintiffs in many malpractice cases. For obvious reasons, they should not be further handicapped by having to combat stale claims.

"* * * the statute was passed because of the uncertainty of the results attending the treatment of disease in the first place, and the increasing difficulty of tracing such results as time goes on. Age, inherited traits, latent diseases, debilitated conditions, sometimes render the most skillful treatment unavailing."

Monohan v. Devinny (1927) 131 Misc. 248, 250, 225 N. Y. S. 601.

The trial court was right in sustaining the defendant's demurrer in this case. In our opinion, it could not have done otherwise. The judgment is affirmed, with costs.