Argued and submitted December 4, 1979,
reversed and remanded June 3, 1980

SECURITIES-INTERMOUNTAIN, INC.,
*Petitioner,*

*v.*

SUNSET FUEL COMPANY, et al,
*Respondents.*

(TC A7605 06171, CA 11004, SC 26291)

611 P2d 1158

Rudy R. Lachenmeier, of Vergeer, Roehr & Sweek, Portland, argued the cause and filed briefs for petitioner.

Donald J. Friedman, of Black, Kendall, Tremaine, Boothe & Higgins, Portland, argued the cause and filed briefs for respondent Sunset Fuel Company.

Elizabeth K. Reeve, of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, argued the cause for

respondent Stadsvold. With her on the briefs were Ridgway K. Foley, Jr., and Kenneth E. Roberts.

Before Denecke, Chief Justice, and Holman,** Howell, Lent, Linde, and Peterson, Justices.

LINDE, J.

**Retired January 21, 1980.

**LINDE, J.**

The question before us concerns the application of the proper statute of limitations to an action for damages brought by plaintiff, as assignee of a general contractor of a construction project, against an architect and a heating contractor allegedly responsible for a defective heating system. There are three possibilities: The six-year "contract" statute of limitations, ORS 12.080(1), the general two-year statute of limitations, ORS 12.110(1), and a special two-year statute relating to actions for damages "for injuries to a person or to property arising from another person having performed the construction, alteration, or repair of any improvement to real property," ORS 12.135. The choice is complex. If the special statute, ORS 12.135, covers all damage claims arising from faulty performance of the covered services in construction work, it applies to this action. If that section is limited to certain kinds of injuries or to tort claims, it then becomes necessary to determine whether plaintiff's action is properly characterized as arising from contract or tort.

The present action was initiated more than two years but less than six years after defendants completed their work and plaintiff discovered the claimed injuries. The trial court entered summary judgment for defendants on their affirmative defense that ORS 12.135 barred the action. The Court of Appeals affirmed, 40 Or App 291, 594 P2d 1307 (1979), and we allowed review.

I

Before examining the parties' contentions it is necessary to review the statutory formulations. ORS 12.080(1) allows six years within which to bring an action "upon a contract or liability, express or implied," with exceptions not relevant here.[1]

---

[1] ORS 12.080(1):

"An action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070 and 12.110 and except as

ORS 12.110(1) enacts a two-year limit for a list of specified intentional torts and for "any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter."[2] Thus ORS 12.110(1) does not purport to be a statute of limitations for a general category called "torts." Rather, it covers the residual category of those actions which cannot be said to arise from contracts or from other sources of liability covered by different statutory limitations.[3]

ORS 12.135 is a later addition to these statutes, enacted in 1971. It provides:

> "(1) An action to recover damages for injuries to a person or to property arising from another person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such other person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within two years from the date of such injury to the person or property; provided that such action shall be commenced within 10 years from substantial completion of such construction, alteration or repair of the improvement to real property.
>  . . . ."

otherwise provided in ORS 72.7250; . . . shall be commenced within six years."

The Court of Appeals noted that plaintiff did not seek to invoke ORS 12.080(3), which allows six years for an action for "injury to any interest of another in real property," with exceptions.

[2] ORS 12.110(1):

> "An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

[3] An affirmative rather than merely residual inclusion of actions "for negligent injury to person or property" in ORS 12.110 is implied by ORS 12.115, which establishes a 10-year maximum delay for such actions but without extending "the limitations established by ORS 12.110."

Unlike the two earlier sections, this statute does not define its coverage by the legal source or nature of the liability on which the action is founded but on the character of the injuries incurred in a specified context. Its literal elements are that the action be one to recover damages for injuries to a person or to property, and that these injuries have arisen from another person having performed certain services in the construction, alteration, or repair of real property. When the action is by the person for whom the contractual services were to be performed against persons engaged to perform them, as it is in this case, the question is whether ORS 12.135 applies to a claim of financial losses from alleged breaches of contract by the persons so engaged.

The coverage of the statute has been the subject of divided opinions in the Court of Appeals. In the first case raising the issue, the court held that an action on an express warranty to remedy defects in the repair of a building was not limited to two years but could be commenced within six years as a contract action governed by ORS 12.080(1). *Housing Authority of Portland v. Ash Nat'l,* 36 Or App 391, 584 P2d 776 (1978). The opinion explained this conclusion by two reasons: first, that the words "injuries to a person or to property" appear to contemplate tort actions, and second, that although ORS 12.080 excepts from its six-year limitation some contract actions governed by other sections, it was not amended to include such an exception for ORS 12.135. In the present case, the Court of Appeals avoided any reference to this preceding opinion, since it held that plaintiff's action should not properly be characterized as an action upon a contract but rather as a tort action. Judge Buttler concurred on the different ground that the damages claimed here were not for injuries to a person or to property. 40 Or App at 301. In a subsequent action on an express warranty, the court adhered to its decision in *Housing Authority of Portland v. Ash Nat'l,* but one member of the court who participated in all three

cases concluded that he now thought that decision to have been wrong and that ORS 12.135 should properly govern actions on contract as well as tort theories. *Amfac Foods v. Fred A. Snyder Roof, Inc.,* 43 Or App 107, 602 P2d 321 (1979).

The problems of the statute's intended coverage cannot be wholly resolved by an examination of its text. Certainly the use of the terms "injuries to a person or to property" includes the kinds of harms which, when caused by substandard construction work, might give rise to a tort claim. But ORS 12.135 makes no mention of the legal theory on which a claim for damages is founded, nor must it necessarily preclude the wider reading urged by defendants that it covers such financial "injuries" from faulty performance as, for instance, a reduced value of the building or the cost of substitute performance. We therefore turn to an examination of its legislative history.

The impetus for a special limitation of actions against building contractors apparently came from the Associated General Contractors of America, Inc. (AGCA), a trade association. The original bill, introduced as HB 1259 in the 1971 legislative session, proposed that initiation of any action, "whether in contract, tort or otherwise" arising from a contractor's work on an improvement of real property be limited to six years from the completion of the project, defined as the date when the improvement either is accepted by the "contractee" or is ready for use or occupancy. However, the bill also provided that it would not extend a period of limitation provided by another statute.

It is apparent that this bill was addressed to the contractors' concern, not about the length of the limitation periods but about fixing the time from which these periods are measured, specifically about claims that might "arise" from latent defects in construction work long after a potential defendant had completed the work. The outer limit of such claims was to be six years from the date of completion, whether

the claim was "in contract, tort or otherwise," and irrespective of the kind of injury claimed. However, if another statute limited the time within which to commence the action, HB 1259 would not extend that time. We understand this to have intended that an action previously subject to a two-year limitation from the date when the injury occurred, or perhaps when it was discovered, would still be subject to that limitation even short of six years from the date of completion. Thus HB 1259 did not propose to do away with the preexisting distinction between contract claims and other theories of liability; it merely proposed to subject them all to the outer limit of six years measured from the date of completion.

Evidently the absolute six-year limitation was not acceptable to the House committee that considered the bill. The committee extended the period to ten years and added a new provision addressed to "an injury to property or person or an injury causing wrongful death." If such an injury occurred after the eighth year following completion, an action "in tort" to recover damages could still be commenced within two years from the date on which the injury occurred, so that for such actions the ultimate limitation would be 12 rather than 10 years after the completion of the project. Eng HB 1259 (April 16, 1971). Thus the reference to an "injury to property or person" first entered the bill in this proposed amendment, coupled with references to "wrongful death" and actions "in tort."

The committee amendment in turn was unsatisfactory to the original proponents. It led them to propose a new version, now phrased to apply to "[a]n action to recover damages for injuries to a person or to property," which was to be limited to two years from the date of the injury but not more than seven years from the date the work was completed. The spokesman for the AGCA explained that this proposal was patterned on the then current provision governing medical and dental malpractice actions, ORS 12.110(4)

(1971). With a change in the outer limit from seven years to ten, this amendment became the basis for ORS 12.135.

In summary, HB 1259 began with the objective of fixing a starting date for applying the statutory time limits to actions against construction contractors in contract, tort, or otherwise, while maintaining the existing differences in the limitation periods. Attention shifted to the problem of tort actions "arising" late in the period measured from completion. The final bill, which was said to intend a parallel to malpractice actions, made no reference to "contract" or "tort"; but it incorporated the two-year limitation common to other noncontractual claims, measured from the date of an "injury to a person or to property," and subject to a ten-year limitation from the date of completion.

Neither the text nor the legislative history persuades us that ORS 12.135 eliminated the six-year period of limitation on commencing a conventional action for breach of a contract in the building industry. To the contrary, the original bill specified the six-year period already familiar for actions on contracts, only fixing a starting date for this period and preserving any shorter period that might apply under another law; the two-year period now in ORS 12.135 first entered the bill only to save "tort" actions for certain classes of injuries that might occur late in the limitation period. The final shift confined the entire bill to these classes of injuries "to persons or to property." The origins of this phrase and the chosen analogy of medical and dental malpractice actions indicate that the contemplated injuries were those analogous to the "injuries to the person" covered by ORS 12.110(4), but the bill again eliminated any reference to "tort." Although actions for such injuries will often be based on a tort theory, particularly when the injury is to someone not a party to the construction contract, it is not the choice of theory but the nature of the injury that was made the criterion of ORS 12.135.

■ We conclude that the phrase "injuries to persons or to property" was thought to encompass what is commonly meant by "personal injuries," i.e. bodily injuries including their psychic consequences, and physical damage to existing tangible property, but not financial losses such as a reduced value of the completed project due to the unsatisfactory performance of the work or the added cost of satisfactory completion or replacement. Actions to recover such financial losses remain within statutes of limitation other than ORS 12.135.[4] With this perspective we turn to an examination of plaintiff's claims in this case.

■ These claims arise from the installation by defendant Sunset Fuel Company of an allegedly defective heating system in an apartment complex under construction by plaintiff's assignor, the general contractor. Plaintiff sought damages from Sunset Fuel Company and also from defendant Cy Stadsvold, employed as the architect on the project. The injuries alleged in the two counts of the complaint against Sunset Fuel Company consist of costs in redesigning the system or completing it as designed or as redesigned, plus interest losses caused by the delay in construction. The complaint against Stadsvold essentially repeats the same statement of injuries, with the addition of a claim for plaintiff's staff time needed to obtain a loan to cover the increased costs.[5] These are

---

[4] In *Kashmir Corporation v. Barnes,* 278 Or 433, 564 P2d 693 (1977), both parties assumed without discussion that ORS 12.135 was the statute of limitations applicable to a damage action against a surveyor for negligently causing a shortage in a land purchase, and the case was litigated under this statute. In the light of the above analysis, the assumption appears to have been erroneous.

Again, in *Sponseller v. Meltebeke,* 280 Or 361, 570 P2d 974 (1977), the choice debated between the parties was whether ORS 12.135 or the Uniform Commercial Code's limitation on warranty actions, ORS 72.7250, applied to fix the starting date for an action on an implied warranty of fitness in the sale of a house. The question whether plaintiff's injury was of the kind covered by ORS 12.135 was not at issue and not discussed. Nor was this issue decided in *Mt. Hood Radio & TV v. Dresser Ind.,* 270 Or 690, 530 P2d 72 (1974).

[5] In its "second cause of action" against Stadsvold plaintiff pleaded its claims as a third party beneficiary of Stadsvold's contract with the contractor rather than as the contractor's assignee.

characteristic financial injuries alleged to result from faulty performance of a business transaction. There is no allegation of any personal injury or injury to tangible property occurring in the course of or in consequence of the faulty performance, in the sense intended by ORS 12.135. Accordingly, that statute does not apply to this case. It remains to determine which statute does apply.

## II

Defendants maintain that plaintiff's action was commenced too late because its causes of actions are not "upon a contract" within the six-year limit of ORS 12.080(1) but rather are tort claims and therefore limited to two years. The argument rests upon a line of cases, reaching at least from *Dalton v. Kelsey,* 58 Or 244, 114 P 464 (1911) to *Ashley v. Fletcher,* 275 Or 405, 550 P2d 1385 (1976), in which this court has sought to determine the statute of limitation appropriate to the "real" character of the action rather than to leave this solely to the plaintiff's chosen statement of his cause of complaint.[6] The resulting body of law is explicable as the product of case-by-case development more than of any single coherent theory.

As long as statutes prescribe different periods for commencing an action depending on its legal character, it is often unavoidable to characterize a

---

[6] This characterization has been variously phrased as the "gist" of the action, *Currey v. Butcher,* 37 Or 380, 384, 61 P 631 (1900); as "essentially" describing the nature of the action, *Dalton v. Kelsey,* 58 Or 244, 250, 114 P 464 (1911); as the "gravamen" of the action, *Currey v. Butcher, supra* at 385, *Goodman v. Fernald,* 154 Or 654, 662, 61 P2d 1253 (1936); *Lindemeier v. Walker,* 272 Or 682, 685, 538 P2d 1266 (1975); as the "substance" of the action, *Currey v. Butcher, supra* at 386, *Dowell v. Mossberg,* 226 Or 173 at 179, 355 P2d 624, 359 P2d 541 (1961); as the "predominant characteristic" of the action, *Lindemeier v. Walker, supra;* or by the phrase that the action "sounds" in tort, *Wilder v. Haworth,* 187 Or 688, 690, 213 P2d 797 (1950).

The choice among these phrases is immaterial, since they do no more than describe the conclusion. The question on which the conclusion depends is *which* characteristic of a given action is "predominant" for the purpose at hand; *i.e.,* whether it is the plaintiff's theory of the legal source of defendant's liability, or the factual setting of the dispute, or the injuries asserted by plaintiff, or his claimed measure of damages, or another element relevant for this purpose. The answer in turn depends on the particular law governing the disputed issue, in this case the statutes of limitations.

plaintiff's action for this purpose. The early Oregon law did not involve such a choice between causes of action on a contract or in "negligence" or "tort," because the latter were not statutory categories. Under the original 1862 Code, based on New York's Field Code, the six-year period of limitation applied both to actions "upon a contract or liability, express or implied," and also "for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated"; a two-year limitation was imposed only on actions for libel, slander, assault, battery, or false imprisonment. 1862 Or Gen Laws 5, ch. 1, §§ 6, 8. Unenumerated tort actions, therefore, such as "trespass on the case," were simply in the residual class equally covered by the six-year limitation if the action was pleaded or found not to be "upon a contract or liability, express or implied."

These sections of the 1862 code were amended in 1870 to move the residual class from the six-year section, now ORS 12.080, to the two-year section, now ORS 12.110. Act of Oct. 22, 1870, § 9, 1870 Or Gen Laws 34-35. *See generally,* Comment, 52 Or L Rev 91, 92-93 (1972). Eventually, this led to regarding the two-year statute as one affirmatively addressed to actions for "torts" rather than only residually to actions "not arising on contract." In *Dalton v. Kelsey, supra,* the parties had settled their respective rights in an irrigation ditch by agreement, and plaintiff complained that defendant subsequently had diverted water belonging to plaintiff. The court noted that the pleaded agreement contained no covenant by defendant to do or abstain from doing anything with respect to plaintiff's share in the ditch or the water therein, so plaintiff's remedy was "case" and not breach of contract. 58 Or at 250. *Schwedler v. First State Bank of Oregon,* 92 Or 33, 179 P 671 (1919), held that an action for trespass on the case, alleging fraud and deceit, could not be commenced after two years as an "action for taking, detaining or injuring personal property." On the other hand, a complaint charging that defendant had negligently released stored water which washed

away plaintiff's property was held to fall within the terms just quoted and therefore timely, over defendant's claim that it was a tort action "not . . . especially enumerated." *Deetz v. Cobbs & Mitchell Co.,* 120 Or 600, 253 P 542 (1927). These decisions took plaintiff's pleading on its own terms; they did not purport to look beyond a well-pleaded complaint so as to impose upon plaintiff a contrary characterization of his cause of action that would defeat it.

Other issues than the time limits on actions were decided by determining the legal character of plaintiff's complaint, with later consequences for the problem of statutes of limitation. The most pertinent instance is *Currey v. Butcher,* 37 Or 380, 61 P 631 (1900). This was an action seeking damages against attorneys allegedly employed by plaintiff to search a title and negotiate a purchase of real property. The complaint alleged that defendants had neglected to discover a judgment lien and to advise plaintiff thereof but had fraudulently purchased and enforced the judgment on their own behalf. Defendants demanded that plaintiff elect between relying on the breach of contract or on the tort of fraud. The court held that the alleged breach of professional duty was a tort as well as a breach of the contract of employment, that "at common law the injured party could sue, either in assumpsit, for a breach of the implied promise, or in case, for the neglect of the duty," and that "[i]n the latter instance it is necessary to aver the contract of employment, showing the relation of attorney and client, as a matter of inducement, because without such contract there could be no duty to the plaintiff, and hence no liability." 37 Or at 385. "Inducement," in the pleading terminology of the times, meant introductory allegations describing the transaction but not defining the legal theory of the complaint, and the court noted that in actions alleging injury from the negligence of attorneys, physicians, mechanics, carriers, or innkeepers, the allegations showing the defendant's occupation or employment from which

his duty arose were characteristic matters of inducement. 37 Or at 385-386, *quoting from* Bliss, Code Pleading (3d ed) § 150. The court concluded that Currey's remaining allegations could be pleaded in aggravation of damages for the tort, and that the complaint therefore stated a single cause of action.

In *Currey v. Butcher,* then, the court said that the client could choose to proceed either for breach of contract (assumpsit) or in tort, and the allegations were read so as to sustain the complaint against an attack for duplicity. Similarly, in *Ashmun v. Nichols,* 92 Or 223, 178 P 234, 180 P 510 (1919), which was a tenant's action for personal injuries after the landlord had promised but failed to repair a defective step, a complaint framed in tort was sustained against an objection that the duty was purely contractual and would not extend to the claimed personal injuries.[7]

---

[7] These remarks of the court, more than 60 years ago, are pertinent:

"Perhaps under our Code systems, we should not attempt to place too much stress upon a somewhat arbitrary and ill-defined distinction between torts and contracts. It is a theory of the Code procedure that a party shall have full redress for all legal wrong, whether the wrong results from a breach of contract or from a breach of more general law. It is obvious that many times, and in many cases the injury will depend partly upon contract and partly upon a tort or wrong. In an action against a carrier of passengers the right of the injured passenger depends entirely upon his contract to be carried safely, and he could not recover without such contract either expressed or implied, and yet superimposed upon the contract is the wrongful and negligent breach, causing an injury to his person, which was not directly contemplated by the contract, and for which the contract provides no measure of damages. To say that the passenger must separate the two, and depend wholly upon the negligent wrong, on the one hand, or the mere breach of contract alone on the other, would be to deprive him effectually of a complete remedy.

"In a case like this we think that when a landlord agrees to keep his premises in repair, the law fastens upon him a *duty* to keep that contract, and if he violates that duty, after notice of the dangerous condition, he ought in principle to be liable for whatever injuries the tenant naturally and necessarily receives from such breach of duty. If the only injury is one directly contemplated in the contract, as the decreased value of the use of the premises, the action of the tenant would be purely upon the contract. But if the negligence of the landlord resulted, necessarily and naturally, in some further injury to his

At stake there was the measure of damages. Neither case involved the statutes of limitations. Nevertheless, once the claims were characterized for these purposes, the characterization thereafter was taken also to govern the period of limitation.

This was shown by *Goodman v. Fernald,* 154 Or 654, 61 P2d 1253 (1936), another action against a landlord for personal injuries resulting from failure to make promised repairs. The court decided that despite the alleged promise, once the demand for damages for personal injuries marked the action as one in tort, the passage of the time for commencing such actions defeated it entirely. The possible alternative of permitting it to proceed on the alleged breach of contract for the appropriate measure of damages was not considered. Again, in *Wilder v. Haworth,* 187 Or 688, 213 P2d 797 (1950), applying the two-year statute of limitation to a medical malpractice action, the court cited *Currey v. Butcher, supra,* for the proposition that an action "based upon alleged negligent performance by defendant of his contract with plaintiff, sounds in tort," although the court went on to point out that even if the plaintiff had chosen to sue for a breach of contract, the six-year period to commence such an action also had elapsed. *Currey,* it will be recalled, far from holding that a malpractice action necessarily must be in tort, merely had allowed the plaintiff's choice between such an action and one in assumpsit as a matter of pleading. Similarly, *Wilder v. Haworth* left open the possibility that a patient might sue a physician for breach of contract.

In *Dowell v. Mossberg,* 226 Or 173, 355 P2d 624, 359 P2d 541 (1961), a patient attempted to do just that. Again the court left open the question whether

---

person or property, he may bring an action, like the one at bar, and it is of little importance whether it is called technically an action on contract or an action upon the tort, or whether it partakes of a double nature, depending upon both tort and contract."

92 *Or* at 234-235.

such an action might be brought upon an express contract for a particular treatment or result. But the court held that when a complaint alleged in general terms that defendant undertook to diagnose and treat plaintiff's ailments with the appropriate care and skill, the contract was only "a matter of inducement," and drafting the complaint as one upon a contract did not change the substance of the action from being one in tort. 226 Or at 183, 190.

*Dowell v. Mossberg* was followed by *Bales for Food v. Poole,* 246 Or 253, 424 P2d 892 (1967), an action against a professional engineer for damages resulting from the careless mislocation of a building on its site. The case differed from the preceding medical malpractice cases in that the parties used a written contract of employment, in a standard form prepared by the American Institute of Architects, but the court noted that plaintiff relied on no specific provision of this contract, only claiming an implied warranty that defendant would use due professional skill and care. Primarily plaintiff attempted to draw a distinction between his property damage and the personal injuries involved in the earlier cases, which the court said was not the line drawn by ORS 12.080 and 12.110. Thus the two-year limit of ORS 12.110(1) was held to apply.[8] Finally, *Bales for Food* in turn was followed in *Lindemeier v. Walker,* 272 Or 682, 538 P2d 1266 (1975) and *Ashley v. Fletcher,* 275 Or 405, 550 P2d 1385 (1976), actions for damages resulting from faulty performance by a real estate broker and by an architect, without adding anything new to the analysis.

---

[8] *Bales for Food v. Poole* was later distinguished in *Owings v. Rosé,* 262 Or 247, 497 P2d 1183 (1972), an action for indemnity by architects against engineers whose negligence had caused the architects to be liable to a contractor, on the ground that indemnity is viewed as arising from an "implied contract" or "quasicontract" rather than "tort." A broad reading of ORS 12.080 might have placed such claims within the coverage of a "liability . . . implied," rather than in the unenumerated class of ORS 12.110(1). The result of the distinction stated in *Owings* was that a purely fictitious "contract" in indemnity cases would support an action "upon a contract" under ORS 12.080, while a complaint alleging breach of an inexplicit obligation in an actual agreement was *not* one upon a contract.

The foregoing line of development may be summarized as follows. Originally all actions upon any contract or liability, express or implied, as well as all actions not otherwise provided for could be commenced within six years, and only a few enumerated tort actions were limited to two years, but after 1870 the unenumerated actions "not arising on contract" were transferred to the two-year statute. When plaintiffs chose to bring actions for personal or property damage caused by the negligence of defendants whose duty toward plaintiff arose from some agreed undertaking, the plaintiffs were entitled to plead the contract as the "inducement" showing defendant's duty and to invoke tort law for the standard of care and for damages. *Currey v. Butcher, supra; Ashmun v. Nichols, supra.* A plaintiff who proceeded in this fashion had to sue within the two-year limitation on actions "not arising on contract." *Goodman v. Fernald, supra; Wilder v. Haworth, supra.*

None of these cases, nor *Dowell v. Mossberg* or *Bales for Food v. Poole,* held that as a matter of substantive law, a plaintiff who alleged a contract for professional or other services and a breach of that contract could not bring an action for damages appropriate to such a claim. Put another way, they do not suggest that if such an action were commenced within the first two years after the alleged breach, it would fail as an action on the contract merely because defendant's breach resulted from careless or otherwise substandard performance that would be actionable without the contract. They do not mean that on such a state of facts, a plaintiff's claim and a defendant's liability are inescapably fixed by the law of torts, no matter what agreement the parties had made. But if an action on a contract theory would be legally possible within the first two years, why not thereafter?

Given the need under ORS 12.080 and 12.110 to characterize an action commenced after two years as either contractual or noncontractual, *Dowell v. Mossberg* and its sequels were concerned to forestall

the transformation of actions based on liability independent of any specific agreement into actions for breach of contract for the sole purpose of circumventing the two-year limitation of ORS 12.110. Still, contracting parties are free to specify services and standards of performance that may overlap noncontractual obligations. ORS 12.110 certainly does not contemplate that a defendant can defeat an action for breach of his contract by asserting that, independent of the contract, his own conduct constituted a tort, whether negligence or, for instance, fraud.

■■　　Thus the statutes and the precedents leave us with several variations when an action for damages against one engaged to provide professional or other independent services is commenced after two years and is pleaded as a breach of contract. If the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this noncontractual duty, then ORS 12.110 applies. *Dowell v. Mossberg, supra.* Conversely, the parties may have spelled out the performance expected by the plaintiff and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard. Such a defendant would be liable on the contract whether he was negligent or not, and regardless of facts that might excuse him from tort liability. Or the nature either of the defendant's default or of the plaintiff's loss may be of a kind that would not give rise to liability apart from the terms of their agreement.[9]

---

[9] Even in the setting of medical or other professional services, a defendant might be liable for failing to carry out an agreed service without having fallen short of generally applicable professional standards of skill and care—for instance, if a patient has specified untypical conditions of treatment, or if a doctor is unavoidably prevented from keeping an appointment. However, irrespective of the legal premise of the action, it is covered by ORS 12.110(4) if it seeks damages for personal injuries arising from a medical, surgical, or dental treatment actually attempted, *cf. Duncan v.*

In such cases, there is no reason why an action upon the contract may not be commenced for the six years allowed by ORS 12.080. Again, the scope of the damages demanded may characterize a complaint as founded in tort rather than in contract. *Ashmun v. Nichols, supra; Goodman v. Fernald, supra.* But if the complaint nonetheless alleges the necessary elements of an action for breach of contract, including the alleged injury, nothing in the statutes prevents proceeding on that theory and limiting the damages accordingly.

These variations may occasionally call for close decisions, but they are the product of a statutory scheme which, since 1870, has imposed different periods of limitations on commencing different actions defined by the legal basis of the claimed liability. Quoting the late Dean Prosser's observation that "there has been a failure to think the thing through,"[10] Justice O'Connell's opinion for the court in *Bales for Food* "concluded that there is a need for change in the law relating to the limitation of actions, but . . . that the change should come through legislation . . . ." 246 Or at 257. Given the existing scheme, we turn to the variations presented by plaintiff's complaint in this case.

---

*Augter,* 286 Or 723, 596 P2d 555 (1979), or by ORS 12.135 if it seeks damages for injuries to a person or to property in the construction context discussed in Part I, above.

New York, which has long had a special provision for malpractice actions in addition to the statutes of limitations from which Oregon's were derived, also has long experience with efforts to bring contract actions in lieu of tort actions for malpractice. *See* Lillich, *The Malpractice Statute of Limitations in New York and Other Jurisdictions,* 47 Corn L Q 339, 347-353 (1962). Contemporary New York decisions indicate that the New York Court of Appeals, in a context similar to the present case, has moved toward an analysis like that adopted here. *See Sears, Roebuck & Co. v. Enco Associates,* 43 NY2d 389, 372 NE2d 555, 401 NYS2d 767 (1977); *Paver & Wildfoerster v. Catholic High School Assoc.,* 38 NY2d 669, 345 NE2d 565, 382 NYS2d 22 (1976). *See also Steiner v. Wenning,* 43 NY2d 831, 373 NE2d 366, 402 NYS2d 567 (1977).

[10] Prosser, The Borderland of Tort and Contract *in* Selected Topics on the Law of Torts 440 (1953).

The complaint alleged specified breaches of written contracts which were annexed to the complaint. The contract with defendant Stadsvold, dated July 1, 1971, was made on a standard form of the Federal Housing Administration, FHA Form No. 2719-A. This standard contract for architectural services spells out the architect's obligations in considerable detail. They include preparation of working drawings and specifications, supervision and certification of the work while in progress, inspections extending through the guarantee period, and reports on any defects and deficiencies in the work of contractors, with a specific reference to seasonal inspections of the heating and cooling systems. The architect is bound not to subdelegate his inspection responsibilities to another inspector without the owner's authorization or his other responsibilities to anyone not acceptable to the FHA Commissioner.[11]

---

[11]

"3. The Architect's services shall include the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, as may be required, the issuance of certificates for payment, the keeping of accounts, supervision of the work, as well as inspections during the guarantee period, and the preparation of drawings and specifications and written opinions in connection with construction changes. . . .

. . . .

"6. The Architect will advise the Owner and the Commissioner of any omissions, substitutions, defects and deficiencies noted in the work of contractors, but does not guarantee the performance of their contracts. The supervision by the Architect is to be distinguished from the continuous personal supervision by a resident inspector. The Architect or his agent shall visit the project as often as the nature and progress of the work and interests of the Owner and the Commissioner require. During the guarantee period the Architect shall inspect the project for evidence of faulty materials and workmanship. The landscape work, heating and cooling systems shall be inspected in appropriate seasons and the project in general shall be inspected at or about the ninth month after completion. In addition, the Architect shall make such other inspections and perform services as may be necessary and incidental to the requirements of the drawings and specifications. When authorized by the Owner, a resident inspector satisfactory to both the Owner and the Architect shall be hired by the Architect at a salary satisfactory to the Owner who shall reimburse the Architect for the cost thereof in addition to the agreed fee.

. . . .

This is exactly the kind of contract that is designed not to leave the scope of the expected professional services to tort standards of professional performance. The complaint alleged that defendant breached the contract by failing to supervise the work of the heating contractor, by failing to review drawings of the proposed system, by authorizing disbursements for uncompleted work, by failing to make inspections, and by delegating the design of the system without the requisite approval. Given the terms of the written contract, these allegations do not invoke a general professional obligation of architects which was negligently performed; they assert breaches of specific contractual commitments. Thus they plead a cause of action "upon a contract" within ORS 12.080(1) which was commenced within the time permitted by that section.

The contract with defendant Sunset Fuel Co. (described as a "subcontractor" doing business as Sunset Engineering), dated July 30, 1971, is less comprehensive on its face. Sunset agreed to "fully construct, perform, and in every respect complete" the work described in the contract "in accordance with the Drawings and Specifications prepared by" the architect, Stadsvold, which "hereby become a part of this Contract." Sunset agreed that it had examined

---

"8. Architect's certificates evidencing recent inspection and acceptability of the work and certifying as to the validity of requested payments shall be executed simultaneously with requests for advances for payment covering construction cost, or monthly reports of progress and compliance when advances during construction are not requested. The foregoing shall be in the form prescribed by the Commissioner and shall be based upon personal inspection of the work by the Architect or his agent. The name of the inspector shall be indicated if the inspection is not made by the Architect.

. . . .

"10. The Architect and the Owner recognize the interest of the Mortgagee and the Commissioner and any action, inaction, or determination by either the Architect or the Owner is subject to acceptance or rejection by the Mortgagee and by the Commissioner. The Architect is required to act and serve in a professional capacity without bias or partiality. No portion of the Architect's work or responsibility may be sublet or delegated to any one not acceptable to the Commissioner."

all plans and specifications and would be bound thereby. The work to be done was stated as follows: "A. Furnished full mechanical details. B. Heating system complete with no exceptions." While the word "Furnished" is ambiguous, because it could mean that design details would be furnished to Sunset, the parties stipulated that Sunset Fuel Co. contracted to design the heating system.

The complaint alleged that Sunset breached this contract in several ways that require separate examination. The first is said to be in "failing to provide the required mechanical details and drawings of the heating system." Since the contract called for Sunset to furnish "full mechanical details," this properly alleges a breach of contract, not a tort disguised as breach of contract. For the second asserted breach, the complaint alleges:

> "In designing the heating system in such an unworkmanlike manner that if completed per design it could not and would not produce sufficient heat throughout the apartment complex to meet the minimum Federal Housing Authority requirements nor any reasonable requirements."

By inclusion of the phrase "unworkmanlike manner," this allegation appears to invoke a negligence standard or general professional duty of due care and skill rather than a contractual standard. In context it can stand as an alleged breach of contract. Apart from that phrase, the allegation is that Sunset's heating system would not meet requirements which were incorporated by reference in the contract, and by which Sunset had agreed to be bound. This differs from a case in which a warranty of "workmanlike" performance or due care toward achieving the intended result is pleaded as an implied term of a general agreement to undertake professional services. *Compare Bales for Food, Inc. v. Poole, supra.*

Finally, the complaint alleged a breach of Sunset's contract in "failing to complete the heating

system, in that it was never made operational." This is adequate to plead a breach under the description of the work to be done as "B. Heating system complete with no exceptions," as well as the next section of the contract, in which Sunset agrees "to complete the several portions and the whole of the work" in a timely fashion. An asserted failure to complete work expressly promised in a contract cannot be said to be an allegation of tort masquerading as a breach of contract.

■     We therefore conclude that the complaint against Sunset Fuel Co. as well as against Stadsvold stated a cause of action "upon a contract" within ORS 12.080(1). It was error to enter summary judgment against plaintiff on the ground that the action was commenced too late. The case must be remanded for further proceedings.

Reversed and remanded.