Argued and submitted February 18, 2000, affirmed January 31, 2001

Richard H. LORD,
*Appellant,*

*v.*

Frank PARISI
and Lane, Powell, Spears, Lubersky,
*Respondents.*

(9711-08677; CA A106705)

19 P3d 358

Mark McCulloch argued the cause for appellant. With him on the briefs was Powers, McCulloch & Bennett.

Barbara L. Johnston argued the cause for respondents. With her on the brief was Larry A. Brisbee.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Plaintiff brought this action against defendants for legal malpractice and negligent misrepresentation. The trial court granted defendants' summary judgment motion because defendants owed plaintiff no duty. We affirm.

In March 1986, plaintiff agreed to sell a parcel of land to his cousin, Steve Lord,[1] who intended to develop the property and then sell it in lots. The actual sale and transfer of title took place some five months later in August. The sale agreement provided that plaintiff would be paid as lots were sold. The agreement also stated that plaintiff and Lord were dealing at arm's length, were not acting as partners, and had not entered into a joint venture.

Defendant Frank Parisi is an attorney. In June 1986, Lord met with Parisi concerning the development of the property and asked him to draft Covenants, Conditions and Restrictions (CC&Rs).[2] Lord asked Parisi to represent only his interests. Parisi explained:

> "[Plaintiff] has never been my client. No one has ever requested that I have the interests of [plaintiff] (or [plaintiff's] trust) in mind in the preparation of any document. In particular, my client, Steve Lord, never requested that I prepare any document or take any other action for the benefit of [plaintiff] or a trust in the name of [plaintiff]. Rather, it was my understanding that even though Steve Lord and [plaintiff] were distant cousins, they dealt as arms length business partners, and that my duty was to protect the interests of Steve Lord and his company in connection with preparation of the CC&Rs."

Over the next several months, Parisi met with Lord several times. Parisi met with plaintiff only once. The meeting was brief, and plaintiff has no memory of what either he or Parisi said during that meeting. Plaintiff never consulted

---

[1] We refer to plaintiff, Richard Lord, as plaintiff and to his cousin, Steve Lord, by his last name.

[2] The CC&Rs contained several provisions regarding the development of the property, including the manner in which the property would be maintained and other rights and responsibilities of the developers and the homeowners.

with his own attorney regarding this matter but says that he never considered Parisi his attorney.

The CC&Rs were completed in March 1987. They identified plaintiff as the owner of the property and Lord as the developer. Together, plaintiff and Lord were referred to as "declarants." The CC&Rs set out the declarants' obligations with respect to maintaining the property during the course of development. They also provided that those obligations would end when the homeowners' association was formed. The documents did not differentiate between the two declarants in terms of their obligations or benefits. Lord took the documents to plaintiff and asked him to sign them. Plaintiff never objected to being named as the owner of the property. Both he and Lord signed the CC&Rs.

Several months later, the purchasers of the lots brought suit against both plaintiff and Lord because of some problems with a road on the property that the CC&Rs required them to build and maintain. Lord filed for bankruptcy, and a substantial judgment was ultimately entered against plaintiff.

Plaintiff then brought this action against Parisi and his law firm, claiming legal malpractice and negligent misrepresentation. Specifically, plaintiff alleged that Parisi had been negligent in naming plaintiff as the land owner in the CC&Rs and making him responsible for the obligations set out in that document and a related maintenance agreement. Plaintiff alleges that because he was no longer the owner of the property when the documents were prepared, there was no reason to name him as such or to make him responsible for any obligation. Doing so, he alleged, amounted to both negligence and negligent misrepresentation on Parisi's part. The trial court granted Parisi and his firm's summary judgment motion on both claims. The court reasoned that Parisi was not plaintiff's attorney and did not owe a duty of care to plaintiff.

On appeal, plaintiff does not dispute that he must establish that Parisi owed him a duty before he may sue him for malpractice. *See Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987) (in negligence actions involving solely economic harm, the plaintiff must establish a duty independent of a

general obligation to prevent foreseeable harm). Plaintiff does not claim that a duty arose out of an attorney-client relationship between Parisi and him; rather, plaintiff concedes that Parisi was not acting as his attorney. In addition, plaintiff does not argue that he and Lord were either partners or joint venturers; that is, he does not argue that Parisi represented a partnership and thus owed a duty to both partners.

Rather, plaintiff advances three reasons why he may bring a malpractice action against Parisi. He argues first that, under Oregon case law, he was an intended beneficiary. Second, plaintiff asks us to adopt the so-called "California test" for determining when a court should recognize exceptions to the rule that only a client may sue his or her attorney for malpractice. Third, plaintiff argues that this is a case in which the defendant has "blurred the lines" of representation to such a degree he should be entitled to maintain an action against Parisi. It is helpful to put plaintiff's arguments in historical context before we address their merits.

■ Initially, the Oregon Supreme Court held that only a client may sue his or her attorney for malpractice. *Currey v. Butcher*, 37 Or 380, 61 P 631 (1900) (the jury should have been instructed that if the plaintiff's husband, rather than the plaintiff, had hired the attorney to do a title search, the plaintiff had no malpractice claim against the attorney); *see also Savings Bank v. Ward*, 100 US 195, 25 L Ed 621 (1879). The court suggested in *Currey* that there might be exceptions to this rule but did not have occasion to define them. *See* 37 Or at 389. Since *Currey*, Oregon has continued to adhere to the general rule that only a client may sue his or her attorney for malpractice, and the question has been when exceptions to that rule should be recognized. *See Roberts v. Fearey*, 162 Or App 546, 550, 986 P2d 690 (1999) (explaining that Oregon has adopted a case-by-case approach in determining whether to take a case out of the general rule).

Three Oregon Supreme Court decisions have addressed that question. The first recognized the possibility of an exception to the general rule in *Currey*, based roughly along the lines of the California test that plaintiff urges us to adopt. *See Metzker v. Slocum*, 272 Or 313, 316, 537 P2d 74 (1975). The court, however, found it unnecessary to decide

whether to adopt that test; it reasoned that even if the test applied, the plaintiff still failed to state a negligence claim against the attorney. *Id.* at 317 (reasoning that there must be "a much more certain, direct, and foreseeable connection between the lawyer's negligence and the third party's injury than exists in the present case").

The court returned to the issue two years later in *McEvoy v. Helikson*, 277 Or 781, 562 P2d 540 (1977). In that case, a court order and stipulation in a domestic relations case imposed a duty on an attorney to hold his client's passport so that she would not leave the country with her minor child. When the attorney breached that duty, the court concluded that the client's spouse could sue for malpractice. *Id.* at 785-86. The court did not explain the basis for its holding other than to say that the circumstances were sufficient to take the case out of the general rule announced in *Currey. Id.* at 786. It is worth noting, however, that the court did not apply the multiple-factor test that it had mentioned two years earlier in *Metzker*. Its holding appears to rest instead on the breach of a legal duty arising out of the attorney's agreement to follow the terms of the court order. *Id.* at 785-86.

Finally, in *Hale*, the court clarified the basis for finding exceptions to the general rule that only a client may bring a malpractice claim against his or her attorney. The court started from the proposition that "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." *Hale*, 304 Or at 284. The court reasoned that, in those circumstances, "[i]t does not suffice that the harm is a foreseeable consequence of negligent conduct that may make one liable to someone else, for instance to a client. * * * Some source of a duty outside the common law of negligence is required." *Id.*

In *Hale*, the court found that duty in the law of contracts. It reasoned that the plaintiff in that case was "a classic 'intended' third-party beneficiary" of the attorney's promise to his client to include the plaintiff in his will and that the plaintiff could bring a breach of contract action against the attorney. *Id.* at 286. The court then reasoned: "Because under third-party analysis the contract creates a 'duty' not only to

the promissee, the client, but also to the intended beneficiary, negligent nonperformance may give rise to a negligence action as well." *Id.* The court thus held that the plaintiff could pursue a negligence claim against the attorney not because the harm was foreseeable but because the court could identify a duty that the attorney owed the plaintiff apart from the foreseeability of the harm.[3] *See Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159 and n 7, 843 P2d 890 (1992) (explaining *Hale*). With that background in mind, we turn to plaintiff's arguments.

■■     Plaintiff argues initially that he is an intended beneficiary. He reasons that because Parisi intended to benefit Lord and because the documents treated Lord and him the same, Parisi also intended to benefit him. *Hale* directs us to look to contract law to determine whether plaintiff qualifies as an intended beneficiary. *See* 304 Or at 283, 286. Under contract law, there are three categories of third-party beneficiaries: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. *Sisters of St. Joseph v. Russell*, 318 Or 370, 374-75, 867 P2d 1377 (1994). A plaintiff who is neither a donee beneficiary nor a creditor beneficiary is merely an incidental beneficiary, *see Johnston v. The Oregon Bank*, 285 Or 423, 429-30, 591 P2d 746 (1979), and only "the first two categories of beneficiaries are entitled to enforce directly contractual promises intended to be for their benefit." *Sisters of St. Joseph*, 318 Or at 375.

■■     Under contract law, a beneficiary is a donee beneficiary if "the purpose of the promisee in obtaining the promise * * * is to make a gift to the beneficiary or to confer upon him a right against the promisor." *Johnston*, 285 Or at 430. Moreover, the promisee's purpose to make such a gift must appear "from the terms of the promise in view of the accompanying circumstances." *Id.* at 429. A beneficiary is a creditor beneficiary if "no purpose to make a gift appears from the terms of

---

[3] The court's initial statement of its holding makes the same point. The court stated:

"We hold that the complaint states claims for damages under both theories, a claim as the intended beneficiary of defendant's professional contract with the decedent and a *derivative* tort claim based on the breach of the duty created by that contract to the plaintiff as its intended beneficiary."

*Hale*, 304 Or at 283 (emphasis added).

the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." *Id.* at 430.

■ In determining whether a party is more than an incidental beneficiary, the Oregon cases have focused on the intent of the promisee and the promisor—that is, in the context of legal malpractice, the client and the attorney—at the time of the contract. *See, e.g., Stayton Coop. Telephone v. Lockheed Electronic,* 79 Or App 193, 198, 717 P2d 1283, *rev den* 301 Or 667 (1986) (discussing intent at time of agreement to make a gift or discharge duty to purported third-party beneficiary). With respect to the issue of intent at the time of the contract, the question is whether "the principal purpose of the attorney's retention is to provide legal services for the benefit of [the plaintiff]. * * * Often, the attorney's retention will benefit another. The inquiry, however, is * * * did the attorney and the client intend the plaintiff to be the beneficiary of the legal services." Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* § 7.13, 532-33 (4th ed 1996).

■ After reviewing the record, we are unable to find any evidence to support the conclusion that plaintiff was either a donee or creditor beneficiary. There is nothing in the "terms of the promise," or in the surrounding circumstances, that indicates an intent on Lord's part to make a gift to plaintiff or to confer some right upon plaintiff. Nor was plaintiff a creditor beneficiary. If we look beyond the promise itself, Lord was not under any duty or obligation to plaintiff that he was attempting to satisfy by obtaining Parisi's promise to draft the documents. The only evidence regarding the purpose of the representation was that Parisi was to draft documents providing an "exit strategy" for Lord with respect to the development project. To be sure, plaintiff benefitted from Parisi's efforts, but he was at most an incidental beneficiary.[4]

---

[1] In a case involving a breach of contract claim by a nonclient against an attorney based on an intended third-party beneficiary theory, we held that a complaint must state ultimate facts showing an intent to confer a contractual right on the plaintiff. *Huang v. Claussen*, 147 Or App 330, 936 P2d 394, *rev den* 325 Or 438 (1997). While this case arises on a summary judgment, the reasoning in *Huang* is useful because, in the present case, plaintiff merely alleges that he is an intended

Under *Hale*, that is insufficient to permit him to bring a malpractice claim against Parisi.

Next, plaintiff urges us to adopt the so-called California test to determine when it is appropriate to recognize that an attorney owes a duty to a nonclient.[5] The test balances six factors:

(1)  The extent to which the transaction was intended to affect the nonclient;

(2)  The foreseeability of harm to the nonclient;

(3)  The degree of certainty that the plaintiff suffered injury;

(4)  The closeness of the connection between the defendant's conduct and the injury;

(5)  The policy of preventing future harm; and

(6)  Whether recognition of liability under the circumstances would impose an undue burden on the profession.

*See Lucas v. Hamm*, 56 Cal 2d 583, 364 P2d 685 (1961).

As noted above, the court recognized in *Metzker* that similar factors might be used to define exceptions to the general rule in *Currey* but did not have occasion to decide whether to adopt them. The court did not use those factors in *McEvoy* and, we conclude, foreclosed their use in *Hale*.

■ The court explained in *Hale* that a nonclient may not bring a malpractice action against an attorney unless the attorney owes that person a duty that arises apart from the foreseeability of the harm. Applying the six-factor California approach would result in the court making a judgment about

---

third-party beneficiary but fails to state what type of beneficiary and fails to allege ultimate facts to support either a donee or a creditor theory. The evidence is similarly lacking. *See id.* at 334 (citing *Clagett v. Dacy*, 47 Md App 23, 420 A2d 1285 (1980)).

[5] The case most frequently cited for this rule is *Lucas v. Hamm*, 56 Cal 2d 583, 364 P2d 685 (1961), *cert den* 368 US 987 (1962). Some jurisdictions have followed California and adopted similar approaches, *see, e.g., Trask v. Butler*, 123 Wash 2d 835, 872 P2d 1080 (1994), while others have rejected it, *see, e.g., Guy v. Liederbach*, 501 Pa 47, 57-62, 459 A2d 744 (1983).

a defendant's duty (or lack of duty) based, in part, on its evaluation of the foreseeability of harm to the plaintiff. Not only would adoption of the California test interject foreseeability into the calculation of duty, contrary to the court's reasoning in *Hale*, but it would also require the court to make that determination—an approach that the court rejected in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). *Hale* forecloses the possibility that Oregon will follow California in deciding when an attorney owes a duty to protect someone other than his or her client.[6]

■ Plaintiff argues finally that, because defendant "blurred the lines" of representation, a legal duty should be implied under *Lee v. Nash*, 65 Or App 538, 671 P2d 703 (1983), *rev den* 296 Or 253 (1984). *Lee* involved a domestic relations dispute in which the husband's attorney filed a motion on the wife's behalf in bankruptcy court. The wife sued the attorney, and the court concluded that an action could be maintained on the ground that the attorney had purported to act as both the husband's and the wife's attorney. *Id.* at 545. In this case, neither plaintiff nor Parisi considered that Parisi was plaintiff's attorney, nor did Parisi purport to act as plaintiff's attorney as the lawyer did in *Lee*. *See Roberts*, 162 Or App at 553-54 (distinguishing *Lee* on the grounds that the "[d]efendant * * * adamantly denie[d] ever having agreed to represent [the plaintiff]" and the plaintiff did not contend otherwise). The mere fact that Parisi included plaintiff's name in the CC&Rs does not mean that he was representing plaintiff's interests. Because Parisi owed no duty to plaintiff, the trial court correctly granted summary judgment in defendants' favor on plaintiff's malpractice claim.

■■ Plaintiff also assigns error to the trial court's ruling granting defendants' motion for summary judgment on plaintiff's negligent misrepresentation claim. Plaintiff may prevail on this claim only if Parisi owed him a duty of care, that is, a duty to avoid negligent misrepresentations. *Onita Pacific*

---

[6] We note that, in *Hale*, the court described the California approach somewhat pejoratively as "applying 'public policy' by 'balancing' half a dozen 'factors' in each case." 304 Or at 285. It also cited *Metzker* only for the general rule that privity is required in a legal malpractice action. *See id.* at 284.

*Corp.*, 315 Or at 159-60. For such a duty to arise, the parties must be in a " 'special relationship,' in which the party sought to be held liable had some obligation to pursue the interests of the other party." *Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1996). As explained above, there was no attorney-client relationship, or other special relationship, between the parties that would permit plaintiff to bring a claim for negligent misrepresentation against Parisi. The court correctly granted summary judgment on plaintiff's negligent misrepresentation claim, as well as his malpractice claim.

Affirmed.