Argued and submitted January 13, Lincoln High School, Portland,
reversed and remanded June 16, 2004

Sandra CABA
and Floy Jones,
*Appellants,*

*v.*

Anthony J. BARKER,
*Respondent.*

0107-07280; A118089

93 P3d 74

Thomas W. Sondag argued the cause for appellants. With him on the briefs was Lane Powell Spears Lubersky LLP.

Brian R. Talcott argued the cause for respondent. With him on the brief was Dunn Carney Allen Higgins & Tongue LLP.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Plaintiffs, residual beneficiaries of a will prepared by defendant, appeal, assigning error to the trial court's dismissal of their claims for professional malpractice and breach of contract. We conclude, under *Hale v. Groce*, 304 Or 281, 744 P2d 1289 (1987), that plaintiffs, as donee beneficiaries of defendant's promised performance, have pleaded legally sufficient claims both for negligence and for breach of contract. Accordingly, we reverse and remand.

In reviewing the trial court's dismissal pursuant to ORCP 21 A(8), "we assume the truth of all well-pleaded facts" in the operative pleading, plaintiffs' third amended complaint, giving plaintiffs "the benefit of all reasonable inferences that can be drawn" in their favor. *Simons v. Beard*, 188 Or App 370, 372, 72 P3d 96 (2003). Plaintiffs' third amended complaint alleged the following material facts: In October 1999, the testator, Laura Carnese (Carnese), was suffering from the effects of a stroke. Carnese had formulated an estate plan that included residuary bequests to plaintiffs Caba, a relative by marriage, and Cammann, a blood relative.[1] Charles Carnese (Charles), an attorney, was Carnese's relative by marriage and had previously represented Carnese on other matters. Charles was aware of Carnese's testamentary plan.

On or before October 22, 1999, Charles arranged for defendant, another Oregon attorney, to meet with Carnese in the hospital and to prepare a will for her. Charles and defendant were friends and former professional colleagues. Before defendant met with Carnese, Charles informed defendant of Carnese's estate plan, and defendant knew or should have known that Carnese's will would include gifts to Charles.

---

[1] The third amended complaint alleges that Cammann assigned her claim against defendant to plaintiff Jones. Because the trial court's dismissal was based on plaintiffs' failure to allege a source of duty owed to them, the court never reached defendant's arguments with respect to assignability of professional malpractice claims. All references to "plaintiffs" in this opinion are to Caba and Cammann.

Defendant promised to prepare Carnese's will. That promise included "an implied promise to make the will invulnerable to a will contest so as [to] achieve [Carnese's] plan to maximize gifts to residuary beneficiaries, including [plaintiffs]." Defendant prepared a will, which Carnese executed on October 22, 1999. Under the will, Charles received a gift of $35,000, was named a residual beneficiary, and was appointed executor of Carnese's estate. Carnese died in November 1999, a few weeks after she executed the will.

The will was admitted to probate and, shortly thereafter, a will contest was filed. Settlement of the will contest resulted in a total depletion of approximately $620,000 from the residual estate, which, in turn, reduced each residuary beneficiary's bequest by more than $100,000.[2]

In July 2001, plaintiffs filed this action, alleging claims for breach of contract and negligence. In addition to the facts described above, with respect to the breach of contract claim, the third amended complaint alleged that

"[d]efendant's promise to prepare [Carnese's] will included an implied promise to make the will invulnerable to a will contest so as [to] achieve [Carnese's] plan to maximize gifts to residuary beneficiaries, including [plaintiffs]. [Plaintiffs] were intended, donee beneficiaries of defendant's promises, including his promise to prepare a will which would not be attacked by a will contest."

Plaintiffs also alleged that defendant had been unable to provide independent legal services to Carnese for various reasons, including his relationship with Charles, Charles's involvement in arranging for and facilitating execution of the will, and defendant's failure to sufficiently communicate with Carnese or properly consider her health. Plaintiffs' allegations pertaining to breach of contract concluded:

"The will contest would not have been filed if [Carnese's] will had been prepared by an independent lawyer. Because of the circumstances described above, defendant was disqualified at the outset from performing his promise and/or was unable to act as an independent lawyer or was materially prevented from acting as an independent lawyer. In

---

[2] Plaintiffs' pleadings here do not discuss the basis of the will contest.

preparing [Carnese's] will, defendant, under the circumstances, breached his implied promise to make the will invulnerable to a will contest, resulting in damages to plaintiffs, who bring this breach of contract claim as intended donee beneficiaries of defendant's implied promise to [Carnese]."

With respect to the legal malpractice claim, plaintiffs reiterated that "[d]efendant assumed the duty [to] make the will invulnerable to a will contest so as to achieve [Carnese's] plan to maximize gifts to residuary beneficiaries, including [plaintiffs]," and further pleaded 12 specifications of negligence:

"Defendant was negligent in one or more of the following particulars, causing damage to plaintiffs:

"1. In failing to advise [Carnese] that her estate plan, in which she disfavored or disinherited blood relatives in favor of [Charles] and his family, could foreseeably give rise to a will contest.

"2. In failing to ascertain from [Carnese] her reasons for her estate plan so that, in the event of a will contest, he would be able to testify about the subject.

"3. In failing to advise [Carnese] that, as [Charles's] colleague and friend, his independence would be an issue in a will contest.

"4. In failing to advise [Carnese] to obtain the services of a lawyer who was not tainted with a relationship with [Charles] and how to obtain such a lawyer.

"5. In failing to act independently of [Charles] by personally interviewing [Carnese] before a will was prepared, by advising her without [Charles's] assistance, and by obtaining a second witness to the will who had not been obtained by [Charles] and who was not an unwilling witness.

"6. In relying upon [Charles] for information about [Carnese's] estate plan before he met her and by using as the will a form of will that [Charles] had prepared.

"7. In failing to investigate [Carnese's] physical, mental and emotional status as of October 22, 1999, including her vision and how to successfully communicate with her.

"8.   In failing to include in the will [Carnese's] reasons for disproportionately favoring [Charles] and his family and disfavoring her blood relatives.

"9.   In failing to ascertain the dynamics of the family situation between blood relatives and relatives by marriage as they existed at the time the will was executed.

"10.   In failing to ascertain the animosity in which [Charles] was held by the hospital staff and others.

"11.   In failing to recognize that circumstances surrounding [Carnese's] estate plan, as described above, included factors which a reasonable lawyer would have recognized exposed [Carnese's] estate plan to a will contest, which factors included the issue of his independence, and in failing to advise [Carnese] of these factors and to minimize them so as not to expose the estate to an unreasonable risk of a will contest, including the failure to video or audio tape the interview with [Carnese] that should have been conducted as stated above.

"12.   In failing to otherwise minimize the chances of a will contest being filed or the success of a will contest."

Defendant moved to dismiss both the breach of contract and negligence claims. In particular, defendant argued that, under *Hale*, in the absence of a "specific promise" to benefit a nonclient third party, only the client could recover damages for a lawyer's breach of contract or negligence. Defendant further contended that plaintiffs' pleadings were legally insufficient in that they were predicated upon, and alleged, merely an implied promise to make Carnese's will "invulnerable to a will contest." The trial court agreed:

"[I]t does seem like the courts have not left beneficiaries with much of a remedy in this kind of situation, where there's a will contest and the estate's depleted and the residual beneficiaries don't seem to have any real recourse against an attorney who may or may not have made some glaring errors. But I do read *Hale v. Groce*, as I did before, to stand for the proposition that unless there's a relationship that exists through a specific promise, there is no contractual obligation on the part of the attorney to the residual beneficiary in this case.

"Here the allegation is—by the plaintiffs is that there is this implied contract to create a will that's impervious to

attack. To me, that is just the general attorney's duty, to act professionally and provide his legal skills, and that is not a duty that carries to a beneficiary, a residual beneficiary of a will. I think *Hale v. Groce* stands for the proposition that there has to be a specific promise to that third party for a relationship to exist to allow for this kind of suit."

On appeal, the parties reiterate their arguments before the trial court. Plaintiffs argue as follows: (1) Under the test prescribed in *Hale* and *Lord v. Parisi*, 172 Or App 271, 19 P3d 358, *rev den*, 332 Or 250 (2001), they sufficiently alleged that they were intended beneficiaries of defendant's promise to Carnese. (2) Defendant's promised performance necessarily included an implied promise to act in accordance with the standard of care owed by attorneys in drafting wills, and the third amended complaint sufficiently alleged that defendant's conduct negligently breached that standard of care. (3) Finally, and in addition, defendant's alleged implied promise to make the will "invulnerable" to challenge, so as to maximize the residuary gifts, was a contractual obligation, independent and distinct from defendant's obligation under the general professional standard of care; thus, defendant's breach of that implied promise—*viz.*, his failure to prepare a will that was, in fact, "invulnerable" to challenge—constituted an actionable breach of contract.

Defendant responds, principally, that plaintiffs' pleadings fail at *Hale*'s threshold. That is, defendant contends that plaintiffs have failed to allege a legally sufficient promise by defendant that would bring plaintiffs within *Hale*'s exception to the general principle that precludes non-client third parties from maintaining tort and contract claims against attorneys. According to defendant, under *Hale*,

"the alleged beneficiaries first must have an enforceable contract right against the attorney that is founded upon a **specific promise** *made for their benefit*. Then, and only then, the beneficiaries of the promise may be able to assert a tort claim against the attorney for negligently failing to perform the promise. Since the attorney's general obligation to use due care is implied by law, and thus exists independent of any specific contractual promise, the implied promise to exercise due care in carrying out the legal representation on behalf of the client, standing alone, cannot

be the promise that creates the duty to the third-party beneficiary, and thus cannot form the sole basis for an alleged third-party beneficiary's claim."

(Italics and boldface added.)

With the issues so joined, the disposition of this appeal depends on the resolution of two overarching questions. First, under *Hale* and *Lord*, have plaintiffs sufficiently alleged that they were intended beneficiaries of defendant's promised performance, so as to permit them, notwithstanding their nonclient status, to pursue an action against defendant? Second, if so, under the analysis of *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 611 P2d 1158 (1980), as applied in *Hale* and subsequent cases, have plaintiffs sufficiently pleaded claims for negligence, breach of contract, or both? We address each question in turn.

We begin with *Hale*. There, the defendant, an attorney, was directed by his client to prepare a testamentary instrument and to include a specific gift of $300,000 to the plaintiff. 304 Or at 283, 288. The defendant prepared the instrument but, inexplicably, failed to include the gift to plaintiff. That omission was not discovered until after the client/testator died. *Id.* at 283.

The putative beneficiary then brought an action against the attorney, alleging claims for negligence and breach of contract. The trial court dismissed both claims and, on appeal, we reinstated the negligence claim and affirmed the dismissal of the breach of contract claim. *See Hale v. Groce*, 83 Or App 55, 57-58, 730 P2d 576 (1986).

The Supreme Court allowed both parties' petitions for review. On review, the court began by discussing whether an exception exists to the general rule that only a client may bring a malpractice claim against his or her attorney:

"Standing alone, without a duty to plaintiff derived from defendant's contractual undertaking [with the client], plaintiff's tort claim would confront the rule that one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property. * * * It does not suffice that the harm is a foreseeable consequence of negligent conduct that may make one liable

to someone else, for instance to a client. Some source of a duty outside the common law of negligence is required."

*Hale*, 304 Or at 283-84.

The court then canvassed decisions from other jurisdictions addressing the cognizability of breach of contract and tort claims against lawyers by disappointed beneficiaries. *See Hale*, 304 Or at 285-86 (citing, *inter alia*, *Guy v. Liederbach*, 501 Pa 47, 459 A2d 744 (1983) (confining third-party claims against attorneys to persons who satisfied requisites of "intended beneficiary" status under *Restatement (Second) of Contracts* § 302(1) (1981)), and *Stowe v. Smith*, 184 Conn 194, 441 A2d 81 (1981) (rejecting attorney's privity defense to disappointed beneficiary's breach of contract claim because, in *Hale* court's description, 304 Or at 286, "the benefit to the plaintiff also was the essence of the benefit promised to the testatrix")). The court concluded:

> "We agree that the beneficiary in these cases is not only a plausible but a classic 'intended' third-party beneficiary of the lawyer's promise to his client within the rule of Restatement section 302(1)(b) and may enforce the duty so created, as stated *id.* section 304. *See, e.g., Johnson v. Doughty*, 236 Or 78, 83, 385 P2d 760 (1963); *Parker v. Jeffery*, 26 Or 186, 189, 37 P 712 (1894) (stating rule that a contract may be enforced by one for whose benefit it was intended). The promise, of course, was not that the lawyer would pay plaintiff the stipulated sum, and it is too late for the lawyer to perform the promise that he did make, but this does not preclude an action for damages for the nonperformance. In principle, such an action is available to one in plaintiff's position.
>
> "Because under third-party analysis the contract creates a 'duty' not only to the promisee, the client, but also to the intended beneficiary, negligent nonperformance may give rise to a negligence action as well. Not every such contract will support either claim. A contract to prepare a will or other instrument may promise different things. It may undertake to make a particular disposition by means specified by the client (for instance, in trust, or by a gift of identified property), or to accomplish the intended gift by specified means of the lawyer's choosing. Failure to do what was promised then would be a breach of contract regardless of any negligence. On the other hand, the lawyer's promise

might be to use his best professional efforts to accomplish the specified result with the skill and care customary among lawyers in the relevant community. Because negligence liability of this kind arises only from the professional obligation to the client, it does not threaten to divide a lawyer's loyalty between the client and a potentially injured third party, as defendant argues."

*Hale*, 304 Or at 286-87.

Thus, *Hale* established two propositions that are central to this case. First, persons whom the client testator intends to benefit under a will are "classic 'intended' third-party beneficiar[ies] of the lawyer's promise to his client" for purposes of *Restatement* section 302(1)(b). *Hale*, 304 Or at 286.[3] Second, the predicate promise, permitting an action for damages by a nonclient against an attorney, may be as specific as "to make a particular disposition by means specified by the client," *id.*, or as broad as "to use his best professional efforts to accomplish the specified result with the skill and care customary among lawyers in the relevant community." *Id.* at 287. Either is legally sufficient to support an action against an attorney by a disappointed beneficiary.[4]

*Lord* corroborates that understanding of *Hale*. There, the plaintiff, who had sold land to a developer, brought an action for malpractice and negligent misrepresentation against the attorney and law firm who had represented the buyer/developer in the transaction and who had prepared covenants, conditions, and restrictions (CCRs) for the property. *Lord*, 172 Or App at 273-74. The plaintiff acknowledged that the defendants had never acted as his

---

[3] *Restatement* section 302(1)(b) defines an intended donee beneficiary as follows:

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

"* * * or

"(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

[4] As discussed below, 193 Or App at 780-82, the *substance* of the promise will determine whether the plaintiff's claims sound in negligence, breach of contract, or both.

attorneys but asserted, nevertheless, that he was an intended beneficiary of their provision of services and that he had been damaged because of their alleged negligence in preparing the CCRs. *Id.* at 274-75. The trial court entered summary judgment for the defendants, and we affirmed.

In affirming, we recounted the evolution of Oregon law pertaining to actions against attorneys by nonclients. *Id.* at 275-76. We noted that, under *Hale*, mere foreseeability of harm could not support such an action and that, rather, " '[s]ome source of a duty outside the common law of negligence is required.' " *Lord*, 172 Or App at 276 (quoting *Hale*, 304 Or at 284). We reiterated that, in *Hale*, that additional "source of duty" arose from the disappointed beneficiary's status as an intended beneficiary of the attorney's promised performance. *Id.*

We then considered whether the plaintiff in *Lord* was, like the plaintiff in *Hale*, an intended donee beneficiary of the defendant lawyer's promised performance. We noted that,

> "[u]nder contract law, a beneficiary is a donee beneficiary if 'the purpose of the promisee in obtaining the promise * * * is to make a gift to the beneficiary or to confer upon him a right against the promisor.' Moreover, the promisee's purpose to make such a gift must appear 'from the terms of the promise in view of the accompanying circumstances.' "

*Lord*, 172 Or App at 277 (quoting *Johnston v. The Oregon Bank*, 285 Or 423, 429-30, 591 P2d 746 (1979)). Applying that test, we concluded that the plaintiff was not a donee beneficiary because "[t]here is nothing in the 'terms of the promise,' or in the surrounding circumstances, that indicates an intent on [the client's] part to make a gift to plaintiff or to confer some right upon plaintiff." 172 Or App at 278. Nor was the plaintiff a creditor beneficiary. *Id.* Consequently, he was merely an incidental beneficiary of the defendants' promised rendition of professional services and, as such, could not maintain his third-party action. *Id.* at 278-79.

■      We return, then, to this case. As noted, defendant suggests that, for plaintiffs to maintain this action, they must plead an "enforceable contract right against the attorney that is founded upon a *specific promise* made for their benefit."

(Emphasis added.) Defendant contends that, because plaintiffs have, at most, alleged only implied promises, their pleadings are legally insufficient. Defendant particularly asserts that a breach of an implied promise to use due care in the preparation of Carnese's will would be legally insufficient to permit plaintiffs to maintain this action.

■ We disagree. Nothing in *Hale* or any subsequent case requires that the attorney make a *specific*, as opposed to a general, promise to the client. Nor do those precedents require that the promise be express rather than implied. Instead, the dispositive inquiry is whether the nonclient was, in fact, a donee beneficiary of the attorney's promised performance. In that respect, the analysis we applied in *Lord* and the *Restatement* formulation cited favorably in *Hale* are congruent. *See* 193 Or App at 777 n 3 (setting out *Restatement* § 302(1)(b)). Rather than focusing on "specificity," we are to assess the intent of the attorney and the client with respect to the rendition of professional services—and, particularly, to determine whether "in view of the accompanying circumstances," *Lord*, 172 Or App at 278, the client's intent in obtaining the attorney's services was to give the beneficiary "the benefit of the [attorney's] promised performance." *Restatement* at § 302(1)(b).

Consistently with that analysis, plaintiffs here, like the plaintiff in *Hale*, are—at least insofar as these pleadings allege—"not only * * * plausible but * * * classic 'intended' third-party beneficiar[ies]" of defendant's promised performance in preparing Carnese's will, including the implied promise to act in a professionally competent manner. Viewed most favorably to plaintiffs, the third amended complaint alleges that defendant agreed to prepare Carnese's will and that, at the time he did so, he had been informed of Carnese's testamentary plan, specifically including her intent to include residuary bequests to plaintiffs in her will. Accordingly, plaintiffs' pleadings sufficiently allege a "source of a duty outside the common law of negligence," *Hale*, 304 Or at 284, permitting plaintiffs to prosecute an action for damages against defendant.

Having crossed *Hale*'s threshold, we proceed, then, to the second overarching question: Does the third amended

complaint sufficiently plead claims in tort, or contract, or both?

Again, *Hale* is instructive. After concluding that the plaintiff there could pursue her action generally, the court considered whether, more specifically, she had pleaded legally sufficient claims for breach of contract or tort. 304 Or at 287-89. That, in turn, depended on whether the complaint alleged an agreement that " 'merely incorporate[d] by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract' " or " 'spelled out the performance expected by the [client] and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard.' " *Id.* at 287 (quoting *Securities-Intermountain,* 289 Or at 259) (brackets in *Securities-Intermountain*).

Applying that formulation, the court in *Hale* concluded that the plaintiff's allegations that the testator had directed the defendant attorney to include a $300,000 gift to the plaintiff in a trust or will and that the defendant had failed to do so stated a claim for negligence. 304 Or at 288 ("These paragraphs adequately allege a claim that defendant was to use his professional skill to accomplish the donor's objectives and failed to do so. That is a tort claim[.]"). With respect to the plaintiff's breach of contract claim, the court noted that the plaintiff had alleged "a specific promise 'that defendant would prepare a trust document wherein [the client] and plaintiff would be co-trustees and through which plaintiff would receive the gift [the client] intended her to have,' " and that the defendant had failed to do so. *Id.* The court concluded that those allegations "allege, not that defendant performed this promise negligently, but that he did not perform it at all. As far as these allegations went, he might have broken the promise purposefully, or under circumstances that might be a partial or entire defense to a negligence claim." *Id.* at 288-89. Accordingly, the court concluded that the breach of contract claim, as pleaded, was legally sufficient. *Id.* ("Whether this agreement in fact was sufficiently specific to go beyond a general promise by defendant to use his professional skills to carry out the assigned project is a matter for proof.").

■	We will not pretend that the distinctions posited in *Securities-Intermountain* and applied in *Hale* are clear or easy. We and the Supreme Court have continued to wrestle with differentiating between tort and breach of contract, particularly in determining the applicable statute of limitations. *See, e.g., Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992);[5] *Metropolitan Property & Casualty v. Harper*, 168 Or App 358, 7 P3d 541 (2000).[6] Nevertheless, the analysis here is relatively straightforward. We conclude that plaintiffs have alleged legally sufficient claims for negligence and breach of contract.

■	The third amended complaint alleges that defendant agreed to render professional services, the preparation of Carnese's will, and that, in the course of that representation, defendant was negligent in various particulars, causing plaintiffs, as donee beneficiaries, to suffer damages. As in *Hale*, those allegations adequately "allege a claim that defendant was to use his professional skill to accomplish the donor's objectives and failed to do so. That is a tort claim[.]" *Hale*, 304 Or at 288.[7]

■	Plaintiffs' contract claim, as noted, is predicated upon defendant's breach of an alleged promise to make the

[5] In *Georgetown Realty*, 313 Or at 106, the court observed:

"The lesson to be drawn from this court's cases discussing the choice between contract and tort remedies is this: When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract * * *. In some situations, a party may be able to rely on either a contract theory or a tort theory or both."

[6] In *Metropolitan Property & Casualty*, we held that, where the plaintiff's complaint alleged a specific contractual obligation that was coextensive with the defendant's general standard of care to complete construction in a "timely and workmanlike manner," the plaintiff had stated a legally sufficient claim for breach of contract. "[C]ontracting parties are entitled to enforce commitments to perform contractual obligations in accordance with a general standard of care." 168 Or App at 369.

[7] Defendant does not challenge the particular legal sufficiency of any of plaintiffs' 12 specifications of negligence. In reversing the trial court's dismissal of the negligence claim, we imply no view as to that matter.

will *"invulnerable* to a will contest so as [to] achieve [Carnese's] plan to maximize gifts to residuary beneficiaries, including [plaintiffs]." (Emphasis added.) That alleged promise, albeit implied, committed defendant to "performance without reference to and irrespective of any general standard," *Securities-Intermountain,* 289 Or at 259, rendering defendant's alleged failure to perform a breach of contract.

We note, at the outset, that the scope and content of the alleged promise is ambiguous. Read broadly, and given the literal meaning of "invulnerable" and "maximize," the alleged promise *could* be to prepare a will that would not be *subject* to a challenge, because even the successful defense of a will challenge could reduce the residual estate. Read more narrowly, the promise could be to prepare a will that would not be subject to a *successful* challenge, reducing the residual estate. In this posture, it makes no difference; a promise to prepare a will that is "invulnerable" to challenge, however construed, is not predicated upon the general standard of professional care.

That is so for two reasons. First, while it is true that many will challenges, and particularly successful ones, may be predicated upon malpractice by the drafting attorney, it is also true that many will challenges, including successful ones, occur in circumstances in which the drafting attorney has not breached any standard of care. Second, in a related sense, the alleged promise was to prepare a product (a will) with a specific characteristic ("invulnerability"). If, in fact, the "product" proved not to be as represented, then, regardless of the reasons for that failure, defendant would be liable for breach of contract. *See Allen v. Lawrence,* 137 Or App 181, 185, 903 P2d 919 (1995), *rev den,* 322 Or 644 (1996) ("An attorney's agreement to obtain a particular result, *i.e.,* to 'get the case reinstated,' does not implicate any general standard of care. It is an explicit promise to produce a particular result, apart from an agreement to exercise a general standard of care to prosecute a claim."); *accord Hale,* 304 Or at 288-89 ("As far as these allegations went, [the defendant attorney] might have broken the promise purposely, or under circumstances that might be a partial or entire defense to a negligence claim.").

We thus conclude that plaintiffs have alleged legally sufficient claims for negligence and for breach of contract. The trial court erred in concluding otherwise.

Reversed and remanded.